## THE FORT PLAIN BRIDGE COMPANY v. SOLOMON SMITH, and others.

It is competent for the legislature, after granting a franchise to one person or corporation, which affects the rights of the public, to grant a similar franchise to another person or corporation, the use of which shall impair or even destroy the value of the first franchise, although the right so to do may not be reserved in the first grant; unless the right to do so is expressly prohibited by the first grant.

Where the charter of a bridge company prohibited the erection of any other bridge within a mile of that to be erected by the grantees, and the section containing that prohibition was subsequently repealed; *Held*, that the grantees of the franchise stood in precisely the same position, in reference to a second bridge, that they would have done if no such prohibition had been contained in their charter.

Assuming that the Mohawk river is a public highway (though it is no longer navigable, except to a very limited extent), and that a bridge over it is an obstruction to navigation and therefore a public nuisance, yet no one has the right to abate it, or to sustain an action for damages occasioned by the erection thereof, unless he has himself sustained some damage not suffered by the rest of the community.

Though a bridge over a navigable stream may be a nuisance to those navigating it, it does not follow that it is a nuisance as to others who do not navigate it.

The Fort Plain Bridge Company having no exclusive grant of the right to maintain their bridge over the Mohawk river and take toll, it follows that every other bridge built over the stream, which does not impede navigation, is lawfully erected, and is not a public nuisance; and no action for damages will lie, for its erection.

If it does impede or impair navigation, it is a nuisance as to those navigating, but not as to any others.

There are three cases in which authority from the legislature is necessary to erect a bridge over a stream: 1. Where the stream is navigable. 2. Where the state owns the bed of the stream; and 3. Where the right to take toll is desired.

Where the bed of a stream belongs to the state, no person has the right to use the same without its consent; but so long as the state officers make no objection to such appropriation, no individual or corporation has a right to complain of it.

THIS is an appeal by the plaintiff from a judgment of the supreme court, rendered in favor of the defendant, in the fourth district.

The action was brought to restrain the defendants from erecting a free bridge across the Mohawk river at Fort Plain, in the county of Montgomery, to the injury of the franchise and property of the plaintiff, and for general relief, it being claimed that the acts of the defendant were unlawful. After issue joined, the cause was tried by a referee, who gave judgment for the defendants. The leading facts of the case are as follows: In 1827 the plaintiff was incorporated by an act of the legislature, and authorized to erect a toll bridge for public use, across the Mohawk river at the village of Fort Plain. In pursuance of this act a bridge was erected, and has been ever since maintained for public use, and for the use of which the plaintiff was authorized to collect and has been accustomed to collect a reasonable toll, and by this means have been in the receipt of an annual revenue of about $500. In the sixth section of the act giving the plaintiff the authority to construct the bridge, there was a restriction against the erection of any other bridge within a mile on either side. This section was repealed by an act of the legislature passed April 15th, 1857. In July, 1857, the defendants, without having obtained any special authority from the legislature, commenced the construction of a free bridge designed for public use, across the Mohawk, at Fort Plain, just above and within forty-nine feet of the bridge of the plaintiff, locating two stone piers to support it in the channel of the river. They had previously acquired the right to the land upon each side of the river upon which each end of the bridge rests, and the proper authorities of the town of Palatine, upon the one side, had laid out a public road to connect with the bridge on that side, and the trustees of the village of Fort Plain had opened a public street to connect with the other end, upon the southerly side of the river. The object and effect of these proceedings was to utterly destroy the value of the plaintiffs' franchise and property, inasmuch as all travelers pass

over the defendants' bridge, and none over that of the plaintiffs. The referee found the fact. that the Mohawk was a public river, and that for a long time prior to the construction of the Erie canal, it had been used for the purposes of public navigation, for the transportation of persons and property, and formed part of an extensive line of internal communication between Utica and Schenectady, conducted by means of different water craft. That since the completion of the Erie canal, in 1825, the actual navigation of the river had ceased, except that at various times rafts of logs and lumber had been floated down, up to as late a period as 1852. At points in the river above the plaintiffs' bridge, the state had caused to be erected dams, totally obstructing navigation at those places, and from the ponds made by these dams water is drawn, in the dry seasons of the year, for the supply of the Erie canal.

The judgment directed by the referee having been affirmed at a general term of the supreme court, the plaintiff appealed to this court.

*John H. Reynolds*, for the appellant.

I. By the common law grants of franchise, without any provision making them exclusive, were construed as exclusive, so far as to protect the grantee from any interference, directly or indirectly, which tended to impair the value of the franchise. This rule obtained as against the government as well as individuals, and any invasion of a franchise was a nuisance, for which the aggrieved party had his remedy at law by action on the case, for the disturbance, or by bill in equity, and an injunction to restrain the injurious act. (3 Kent's Com. 495, and note [8th edition, pp. 573, 574, and note]; *Yard* v. *Ford*, 2 Saund. R. 172; 2 Blackstone's Com. 37, 3; id. 218, 219; *Tripp* v. *Frank*, 4 Term R. 666; *Keeble* v. *Heckirengall*, Holt's R. 20; *Croton Turnpike Road* v. *Ryder*, 1 John. C. R. 611; *Newburgh*

*Turnpike Company* v. *Miller*, 5 J. C. R. 111; *Dartmouth College* v. *Woodward*, 5 Wheaton R. 518; *Huzzey* v. *Field*, 2 Cromp, Meeson and R. 432.)

1. This doctrine is so far modified by recent decisions that it may now be claimed that where the grant of franchise does not express that it is an exclusive privilege, it will not be so construed as against the sovereign, and perhaps not as against individuals in the exercise of a purely private right.

2. The case of the *Charles River Bridge* v. *Warren Bridge* (11 Peters, 420), arose upon two conflicting grants, by the legislature of Massachusetts, and the decision was that the prior grant of a franchise, not in its terms exclusive, did not preclude the legislature from granting another franchise, to be exercised so near the first as to interfere with and destroy it. This case does not determine that the proprietor of a franchise, granted by the sovereign, not in its terms exclusive, has no remedy against a disturber, who is proceeding to exercise a franchise, without any authority of government.

3. The case of the *Auburn and Cato Plank Road Company* v. *Douglass* (5 Selden, 444), arose between a plank road company, operating under the general statute, and the owner of land adjoining the plank road; and the question was whether the company could, in any respect, limit or restrict the use, which the owner might make of his land, prejudicial to the interests of the corporation, and it was held that it could not take any right, as against an adjoining land owner, by implication.

4. The doctrine of these cases does not necessarily affect the plaintiff's right of action, for here the complaint is that the defendants, without authority from the government, are by their acts usurping a right of sovereignty, vested in the state, by the erection of a public bridge over a public river. We insist that these acts amount in law to a public nuisance, which may be abated by the public

· authority, and as they injuriously.affect the plaintiff, a pri-.vate action is maintainable.

II. The Mohawk river is a public navigable river, so far · at least as to ·subject the right of the adjoining owners to the servitude · of the public, for all the ·purposes of pas-.sage or navigation. This has been adjudged by the court of last resort as the law applicable to this river. (*Canal Commissioners* v. *The People*, 5 Wend. 423, 438, *et seq.*; *The People* v. *Canal Appraisers*, 13 Wend. 355; *The Canal Appraisers* v. *The People*, 17 Wend. 571.)

1. It is matter of history that prior to the completion of the Erie canal, the Mohawk river, between Schenectady and Utica, was actually navigated by scows and other vessels in the transportation of property.

2. And it is equally notorious that for at least a century the government of the colony and state have claimed and exercised jurisdiction over it as a public river. (See 17 Wendell, 571; Opinion of Senator Beardsley, pages 574, 609–10–11; Opinion of Senator Tracy, p. 575, 624; also Statutes cited, p. 578.)

3. It is, in legal sense, a navigable river; the public right of navigation exists, and the riparian owner holds, subject, in all respects, to this public servitude. In its natural state it was a navigable river. The fact that it is not actually used for purposes of navigation, or that dams and other obstructions have been permitted by the legislature, does not change the character of the river, or the public dominion over its waters. (*Browne* v. *Scofield*, 8 Barb. 239; *Arundel* v. *McCullock*, 10 Mass. R. 70; *Commonwealth* v. *Charlestown*, 1 Pick. 180; *Charlestown* v. *Middlesex*, 3 Metcalf, 202; *The Enfield Toll Bridge Company* v. *The Hartford and New Haven Railroad Company*, 17 Conn. 40, 54.)

4. And every obstruction by a private person in waters over which the public jurisdiction exists, is a public nui-.sance, and may be abated by the public authority, and if

specially injurious to any particular person, a private action can be sustained. (5 Wend. 449; *Ex parte* Jennings, 6 Cowen 518; *Lansing* v. *Smith*, 4 Wend. 9, 24, 25; *Browne* v. *Scofield*, 8 Barbour, 239; Angell on Water Courses, 5th edition, § 756; *Rose* v. *Graves*, 3 Dowl. Pr. Cases, n. s. 61.)

5. The result must therefore follow that if it be determined that the act of the defendants in placing their piers in public waters without legislative authority be a public nuisance, and by means of this wrongful act the plaintiffs are threatened with an injury peculiar to themselves, a private action to redress or prevent the threatened injury may be maintained.

6. And the application of this remedy is as proper in the case of a corporation, whose legal rights are invaded or threatened, as in the case of a private person.

III. The acts of the defendants amount to the usurpation of a franchise, and an invasion of the rights of sovereignty vested in the people of the state, and the plaintiffs are entitled to be protected against the consequences of this unauthorized assumption of the public prerogative.

1. The defendants propose to erect a bridge for the use of the public, over a public river, and connect it with public roads, for the use of all the citizens of the state. It is in no sense a private structure. (4 John. Ch. 150, 160; 5 Id. 101, 110; 1 Pick. 87; 7 Id. 515; Harg, L. T. 11 Ch. 6.)

2. A bridge is a mere substitute for a ferry (per Savage, Ch. J. 15 Wend. 133), and the right to establish a public ferry is a franchise vested exclusively in the sovereign, and no person without sovereign authority can establish a public ferry. (*Ex parte* Jennings, 6 Cowen, 518, note; 5 Selden, 454, per SELDEN, J.; *Blissett* v. *Hart*, Willes, 508; *The Croton Turnpike Company* v. *Ryder*, 1 J. C. R. 611; *The Newburgh Turnpike Company* v. *Miller*, 5 Id. 101; 3 Kent's Com. 459, note.)

4

3. The fact, that the bridge proposed to be erected by the defendants is to be free of toll, does not make it any the less the exercise of a franchise. It is not necessary to the creation of a franchise, that the grant should authorize the grantee to exact toll. It is the nature of the right or privilege which is to be exercised, that determines the question whether it is or is not a franchise, and not the extent of the profit which the grantee may derive from its exercise.

Franchises are special privileges conferred by government on individuals, and which do not belong to the citizens of the country, generally, by common right. (*Bank of Augusta* v. *Earle*, 13 Peter's U. S. 515; Angell and Ames on Corp. § 4.) In England, it is said that a franchise is a royal privilege, or branch of the king's prerogative, subsisting in a subject by a grant from the crown. (3 Greenleaf's Cruise, title Franchises.)

2. The exercise of a franchise without legislative authority, is a usurpation and a public nuisance " and like every other nuisance subjects the party not only to a public prosecution, but to a private suit by any person specially injured thereby." (Per SELDEN, J., 5 Selden, 444, 445.)

6. The plaintiff's franchise was granted by the proper public authority. It may not be regarded exclusive as against the sovereign, or those who may be vested with the sovereign rights; but it cannot be doubted that the proprietor of a franchise is to be protected against the consequence of all wrongful acts. The whole extent to which the ancient doctrine of the common law has been modified in this respect is, that the grantee of a franchise is at all times subject to have his franchise rendered valueless by the grant of another, to be exercised so near as to destroy the first. But no court has ever held, that a private person may, of his own motion, set up a rival franchise, and thus substantially destroy a legislative grant.

IV. The Mohawk river being a public river, the defend-

ants had no right to undertake the construction of a bridge over it for public use, and the erection is a public nuisance, causing special and peculiar injury to the plaintiff, and indeed the erection was designed to destroy the plaintiff's franchise; and such has been the effect.

1. The plaintiff's right does not depend upon the question how far the erection of the bridge by the defendants constitutes an obstruction to the navigation of the river. (*Inhabitants of Charlestown* v. *County of Middlesex*, 3 Metcalf, 202, per Ch. J. Shaw, 205, 206.)

2. And upon an indictment as for a nuisance, the defendants could not defend by showing that the bridge was, on the whole, a public benefit. (*Rex* v. *Ward*, 4 Adolph. & Ellis, 384; *Regina* v. *Betts*, 22 Eng. L. & Eq. 240.)

3. Here, by the usurpation of a public right and the commission of an unlawful act the plaintiff is threatened with peculiar injury, and the remedy of the plaintiff cannot be destroyed by saying after all the wrongful act benefited the public.

4. If the defendants had undertaken to erect a bridge and collect toll the act would unquestionably be unlawful. The fact that it was a free bridge, only made the erection more injurious to the plaintiff. (*Aikin* v. *W. R. R.* 20 N. Y. 379, per Selden, J.)

V. The case was a proper one for the interference of a court of equity, by injunction, to prevent irreparable injury. (Angell on Water Courses, 5th ed. § 444, et. seq.; Story Eq. Jur. § 925; *Smith* v. *Adams*, 6 Paige, 435; *Mohawk Bridge Company* v. *U. & S. R. R. Company*, 6 Paige, 554.)

1. But as the supreme court refused to restrain the erection by an injunction, and at the time of the trial it appeared that the defendants' bridge had in fact been constructed and had destroyed the entire value of the plaintiff's property, damages should have been awarded the plaintiff according to the case made at the trial, without regard to

the prayer of the complainant. (*Marquat* v. *Marquat*, 12 N. Y. 336; *Emery* v. *Pease*, 20 N. Y. 62.)

2. But if the only remedy of the plaintiff is in a court of law, by action for damages, the judgment given in this action should be without prejudice to such action at law.

*John K. Porter*, for the respondents.

I. At the time the free bridge was erected, the plaintiffs had no exclusive right to maintain a bridge across the Mohawk at Fort Plain.

1. They never had any such exclusive right, except under the sixth section of the act of 1827. That section is as follows: "And be it further enacted that it shall not be lawful for any person or persons to erect a bridge or establish or keep a ferry across the said river, within one mile from the place where the said bridge shall be erected and built, other than persons residing within that distance, in their own boats, for their own convenience merely." (Laws of 1827, 208, chap. 209, § 6.)

2. The sixth section was repealed by the act of 1857. (2 Laws of 1857, 38, chap. 498.)

3. The authority of the legislature to repeal the restriction is unquestionable.

(1.) The ninth section of the act of 1827 was as follows: "And be it further enacted that the legislature may, at any time, alter, amend or repeal this act."

(2.) "Where, however, a state legislature reserves to itself in the very charter it grants to a private corporation the right of altering, amending or repealing the act of incorporation, a subsequent repeal of such act of incorporation will be valid and constitutional. Such a reservation in the charter of a corporation, upon common law principles, would not be a condition repugnant to the grant, but a limitation to the grant. And if such a reservation at common law would be repugnant to the grant, it is compe-

tent for a state legislature to alter this rule of the common law. And the reservation of such a power in a legislative grant would of itself change the law in relation to that particular grant." (*McLaren* v. *Pennington*, 1 Paige, 102, 109.)

(3.) This question, mooted in the case of the *Oliver Lee & Co. Bank*, has been settled finally by the ultimate tribunal on questions arising under the federal constitution. (*Sherman* v. *Smith*, 1 Black's R. 587.)

(4.) The uniform policy of this state, for nearly forty years, has been against making irrevocable grants of corporate franchises and public monopolies; and the reservation in the case of this corporation, and subsequent legislative revocation of the monopoly, is only one of innumerable illustrations of this policy. (1 R. S. 601, § 8; Constitution, art. 8, § 1.)

II. The monopoly expressly granted to the plaintiffs, having been expressly revoked, they can claim no exclusive right by implication.

1. "Legislative acts granting franchises to corporations are to be construed strictly according to their terms; and the grantees in such acts take nothing by implication, either as against the power making the grant, or against other corporations or individuals." (*Auburn Plankroad Co.* v. *Douglas*, 5 Seld. 444.)

2. The cases holding a contrary doctrine have been considered and over-ruled, as well in this court as in the supreme court of the United States. (5 Selden, 444; 11 Peters, 521–3, 548, 9.)

3. Even in the absence of a reservation of the right of alteration or repeal, it was recently held in this court that a similar prohibition could be repealed, and that, though the legislature has power to grant an irrevocable monopoly to a bridge company, "nothing but plain English words will do it." (*Chenango Bridge Co.* v. *Binghamton Bridge Co.* 27 N. Y. Rep. 87.)

4. The plaintiffs have, therefore, since the repealing act, no exclusive rights in this regard—and no legal rights whatever under the act, as against the defendants—except to exact toll from them, if they choose to cross the plaintiffs' bridge.

III. The title of the defendants to the bed of the river as riparian proprietors, was absolute, except so far as it might be "subject to the servitude of the public interest for passage or navigation," and in this respect no injury to the plaintiffs, past or prospective, was either proved or alleged. (*Commissioners of Canal Fund* v. *Kempshall*, 26 Wend. 404.)

1. "The public right is one of passage, and nothing more, as in a common highway. It is called by the cases an easement; and the owner of the adjoining land has a right to use the land and water of the river, in any way not inconsistent with this easement. If he make any erection rendering the passage of boats, &c., inconvenient or unsafe, he is guilty of a nuisance; and this is the only restriction which the law imposes upon him." (*Ex parte* Jennings, 6 Cowen, 527, 8.)

2. "The owner of land may put it to any use which does not infringe some fixed legal right of another; loss or damage to one person, arising from the use made by another of his property, being *damnum absque injuria*, unless the former has previously acquired some legal right to restrict the use which the latter shall make of his property. When no such right of restriction exists, it is immaterial what may be the motives of the proprietor for dealing with his property in a particular way." (*Auburn Plankroad Co.* v. *Douglass*, 5 Seld. 444.)

3. At the conclusion of the opinion in the Chenango bridge case, Judge WRIGHT said: "Upon the whole, I do not think the plaintiffs were entitled to sustain the action. The grant to them was of the right to maintain a bridge across the Chenango river at or near Chenango Point, and

take certain rates of toll for crossing it; and this was the whole grant.   There was no monopoly over the waters of the Chenango river above and below their bridge given to them; nor any undertaking by the state, in the act incorporating them, not to sanction competition, nor to make improvements that might diminish their income.   In this respect they have no rights to be impaired, and consequently none which the courts are called upon to protect." (27 N. Y. Rep. 104.)

IV. The erection of the free bridge by the defendants on their own land, was therefore plainly lawful, in respect to the rights of the defendants under the legislative grant.

1. The act incorporating the plaintiffs assumed that others, in the absence of a prohibition, might lawfully, and of right, erect a bridge on either side; and the exercise of this right was accordingly restricted, for one mile above and below, by the sixth section since repealed.   (Laws of 1827, 208, § 6.)

2. This legislative assumption is in harmony with the general understanding of the law; and the fact found by the referee, that of the fifteen bridges erected from time to time across the Mohawk between Utica and Schenectady, five only were built by special legislative permission, should be deemed, in connection with the acquiescence of the public and the state authorities, as controlling evidence of the law, as an express declaratory act.

3. The legislative sanction of this bridge by the act of 1860, has the force of a declaratory law, in harmony with the decision of the court below; and the plaintiffs cannot claim to be prejudiced by a decision in accordance with a statute, which would be decisive of the judgment in case of a future trial.   (Session Laws of 1860, 400; *White* v. *Coventry*, 29 Barbour, 305.)

4. The plaintiff's objection to the bridge is, that it enables the public to pass toll-free; but the dedication of a free bridge to public use, is no more the usurpation of a

franchise, than the dedication of a school house and burying ground.

5. Free bridges have been uniformly distinguished in this respect from toll bridges and ferries, which at common law the owner was bound to repair.

6. Thus "if a man make a bridge for the common good of all the subjects, he is not bound to repair it; for no particular man is bound to reparation of bridges by the common law, but *ratione tenuræ* or *prescriptionis*." (2 Coke's Institutes, 701.)

7. "Magna Charta only extends to prevent the subject from being compelled to erect new bridges—' *non distringatur facere pontes*'—not to exempt him from repairing those already erected, in case they be public benefits. This is the grand criterion. If a man erect an useless or a mere ornamental bridge, neither he nor the public are bound to sustain it; and if it is principally for his own benefit, and only collaterally of benefit to others, as in the case cited of the bridge to the mill, the public have nothing to do with it. But where it is of public utility, as is expressly found in the present case, the public, which reaps the benefit, ought to sustain the burden of repairing it. Else it would be a great discouragement to public spirited persons to erect a beneficial bridge, provided they must either repair it themselves, or it must run to ruin." (*The King* v. *The West Riding of Yorkshire*, 2 W. Black. R. 686, 7.)

8. The erection of a free bridge on a stream not navigable, is simply the use by a party of his own for a lawful and beneficial purpose.

V. The plaintiffs are not entitled to a reversal, on the theory that the bridge is, contrary to the finding of the referee, an unlawful obstruction to navigation, and therefore a public nuisance.

1. This is not the ground of the action, nor the case

made in the pleadings. (*Brazill* v. *Isham*, 2 Kernan, 9; *Field* v. *Mayor of New York*, 2 Selden, 179.)

2. The plaintiffs are not, and do not claim to be navigators, or to have been subjected to, or threatened with, any injury in respect to navigation.

3. The river, which was once navigable at this point by the aid of improvements under state authority, has for more than a quarter of a century ceased to be navigable, through drainage by state feeders, and permanent obstructions to navigation interposed by authority of the sovereign.

4. It is found as matter of fact that the bridge did not obstruct navigation, and would not have obstructed it even if the river had been navigable.

5. The plaintiffs cannot tack a claim of special injury, to a public nuisance which is not found, and did not exist.

6. The river at this point was not, in the legal sense, a navigable stream, at the time of the construction of the free bridge. (*Curtis* v. *Keesler*, 14 Barbour, 518; *Munson* v. *Hungerford*, 6 Barbour, 265, 270; *Canal Commissioners* v. *The People*, 5 Wendell, 448.)

7. Upon the facts found, the plaintiffs plainly could not have been convicted under an indictment for nuisance, which alleged that the river was neither navigated nor navigable.

8. Even if the river had been navigable, they could not have been lawfully convicted under an indictment which alleged the fact here specially found, that the bridge was not an obstruction to navigation; for it is only "*prima facie*," that an obstruction in a navigable river is a nuisance *per se*. If it be not injurious to navigation, it is not unlawful. A public nuisance which neither annoys nor injures the public, would be a legal anomaly. (*Hart* v. *Mayor of Albany*, 3 Paige, 213; *Mohawk Bridge Company* v. *Utica & Schenectady Railroad Company*, 6 Paige, 555; *The King* v. *Russell*, 13 Eng. Com. Law R. 254, 266.)

9. "An injunction to the building of a bridge will not be granted, unless the evidence clearly shows that the

bridge, if erected, would be an obstruction to the naviga-
tion of the river." (*Hutchinson* v. *Thompson*, 9 Ohio
Rep. 52.)

10.. To constitute the structure a nuisance, it must be a
present, substantial obstruction to actual navigation. (*Peck-
ham* v. *Henderson*, 27 Barb. 210, 211; *City of Rochester* v.
*Curtiss*, 1 Clarke's C. R. 344.)

11. "Where the court is satisfied that the matter .com-
plained of is not a nuisance, the injunction is immediately
refused. or dissolved." (Eden on Injunctions, 160.)

12. In the case of the *City of Rochester* v. *Curtiss*, the
plaintiffs having a bridge, the abutments of which nar-
rowed the channel of the river, asked an injunction to
restrain the defendant from constructing a wall immedi-
ately above—encroaching as much and no more on the
river—on the ground that it endangered their bridge, &c.,
and also that it was a purpresture obstructing the river,
which was by law declared a public highway. Held, that
the danger from the erection of the wall was nothing as
long as the abutment of the bridge was continued, and
that no injunction should be allowed, as long as the city
continued their own obstruction by the abutment." As to
the other ground of complaint, the court said: "The
river is a highway only for particular purposes, viz: for
the purposes of navigation; and the river at this point
is not navigable. An injunction will not, therefore, be
allowed on this ground." (1 Clarke's Chancery Rep. 344;
*Hecker* v. *New York Balance Dock Company*, 24 Barb.
215.).

13. Where the owners of a mill dam at Stillwater, on
the Hudson, sued for damages caused by the erection of a
dam immediately above, LIVINGSTON, J., said: "Whatever
their pretensions to build a dam and mills adjoining their
own land may have been, it must be conceded that, as far
as the public is concerned, the defendants had the same
right opposite their ground, provided it could be done

without injury to the navigation of the river."  (*Palmer* v. *Mulligan*, 3 Caines, 313.)

14. The two instances in a period of twenty-three years, in which logs were got through Fort Plain, do not make the river at that point a navigable stream.  (*Munson* v. *Hungerford*, 6 Barb. 265; *Curtis* v. *Keesler*, 14 Barb. 511.)

15. The plaintiffs not being interested in navigation, were in no position to assert the rights of navigation, or to demand that the defendants be restrained, in that regard in the use of their own property.

16. "The remedy to prevent the erection of a purpresture and nuisance in a bay or navigable river is by injunction at the suit of the attorney general."  (*People* v. *Vanderbilt*, 25 Howard's Practice Rep. 140, 142.  In court of appeals.)

VI. In no view of the case were the plaintiffs entitled, upon these findings, to a decree for a perpetual injunction.

1. Every intendment of law as well as fact is to be made in support of the judgment, on appeal.  (*Carman* v. *Pultz*, 21 N. Y. 547; *Viele* v. *Troy and Boston Railroad Co.*, 20 N. Y. 184.)

2. The application was one to restrain the defendants in the use of their own property—one never to be granted except in extreme cases.  (*Lasala* v. *Holbrook*, 4 Paige, 169; *Myers* v. *Gemmel*, 10 Barb. 537.)

3. They failed to present to the court below a case of clear and undoubted legal right.  (*Fisk* v. *Wilber*, 7 Barb. 395, 401, 2.)

4. Their remedy by action was ample, if they could maintain their claims in a court of law.  (*Jerome* v. *Ross*, 7 John. C. R. 315; *Fisk* v. *Wilber*, 7 Barb. 395.)

5. Works of a public nature are not arrested by injunction, unless in cases of clear illegality and imminent and irreparable injury.  (*Drake* v. *Hudson River Railroad Company*, 7 Barb. 508; *Livingston* v. *Tompkins*, 4 John. C. R. 415; *Gibbons* v. *Ogden*, 17 John. 488.)

6. Thus, in the case of *Barnes* v. *Calhoun*, where an injunction was sought against interfering with a stream by the erection of a mill, flooding the land of an adjoining proprietor, the court said: "If the plaintiff, indeed, were without any other remedy, we should feel ourselves bound to interpose in his behalf; for the act contemplated by the defendant is an admitted wrong." But even on this state of facts, it was held that it was discretionary with the court to grant or refuse a decree for an injunction; and the bill was dismissed on the ground that a court of equity "will only act in a case of necessity, where the evil sought to be prevented is not merely probable but undoubted; and it will be particularly cautious thus to interfere, where the apprehended mischief is to follow from such establishments and erections as have a tendency to promote the public convenience." (2 Iredell's Equity Rep. 199, 201, 2.)

7. The bridge had been constructed long before the hearing, and an injunction would have been ineffectual by way of prevention—the only purpose for which it is legitimate.

8. A court of equity has jurisdiction to a certain extent in cases of public nuisance, although it has been rarely exercised. The common law courts have an undisputed jurisdiction over public nuisances, by indictment; and a court of equity ought not to interfere in a case of a misdemeanor, when the object sought can as well be attained in the ordinary tribunals. The injunction is a preventive remedy. If the injury be already done, the writ can have no operation; for it cannot be applied correctively so as to remove it. It is not used for the purpose of punishment, or to compel persons to do right, but simply to prevent them from doing wrong. (*Attorney General* v. *New Jersey Railroad Co.*, 2 Green's C. R. 136.)

9. In the case last cited, which was an information filed in behalf of the state against the defendants, in respect to

a bridge across the Passaic, seriously obstructing naviga-
tion, Chancellor Vroom said: "I cannot avoid the conclu-
sion that the nuisance complained of in the information,
and which it appears to be the object of the relators either'
to prevent or abate, is already there. The thing is done;
and the application to this court, if not too late, would be
unavailing even if granted." He adds: "The relators
insist that they have made the application as soon as prac-
ticable; that they confided in the agreement of the com-
pany as to the width of the draw, and were deceived.
Admitting this to be all true, it is not perceived that the
case is varied. If the nuisance be erected before the party
has time to prevent it, the only remedy is to have it abated;
and .whether it be accomplished by the deception of the
party or by other means, the province of the court remains
the same." (2 Green's C. R. 141, 2.)

VII. But it is a fatal .objection on appeal, that on the
facts found the relief demanded was not matter of legal
right; and this court will not review the exercise by the
court below of its discretion, in refusing its aid by injunc-
tion, and leaving the plaintiffs to their remedy at law.
(*City of Georgetown* v. *Alexandria Canal Company*, 12
Peters, 92; *Hart* v. *Mayor of Albany*, 9 Wendell, 572,
585; *Mohawk Bridge Co.* v. *Utica and Schenectady Rail-
road Co.*, 6 Paige, 555.)

Mullin, J. The 6th section of plaintiff's charter, which
prohibited the erection of a bridge within a mile of the
plaintiff's bridge, having been repealed, the plaintiff stands
in precisely the same position in reference to the defend-
ants' bridge, that they would have done if no such prohi-
bition had ever been contained in their charter. The right
of the legislature to thus alter and modify the plaintiff's
charter cannot be questioned.

Since the case of *The Charles River Bridge* v. *The
Warren Bridge* (11 Peters, 420), it has been understood to

be the law, that it is competent for the legislature, after granting a franchise to one person or corporation, which affects the rights of the public, to grant a similar franchise to another person or corporation, the use of which shall impair or even destroy the value of the first franchise, although the right so to do may not be reserved in the first grant; unless the right so to do is expressly prohibited by the first grant. (*Mohawk Bridge Company* v. *Utica & S. R. R. Company*, 6 Paige, 554; *Oswego Falls Bridge Company* v. *Fisk*, 1 Barb. Ch. R. 547.)

These propositions dispose of the principal questions in this case. But it is urged that the Mohawk river is a public stream, and that the defendants have no right to bridge it without authority of the legislature.

On the facts found in this case, the Mohawk river is not navigable, except to a very limited extent. Its capability for navigation has been very materially lessened within the last thirty years; hence the rules of law which applied to it then do not apply to it now.

But assuming that it is a public highway, and that the bridge is an obstruction to navigation, and therefore a public nuisance, yet no one has the right to abate it, or sustain an action for damages occasioned by the erection, unless he has himself sustained some damages not sustained by the rest of the community. (*Pierce* v. *Dart*, 7 Cowen, 609; *Lansing* v. *Smith*, 8 Cowen, 146; 9 Wend. 315; 6 Hill, 292; 3 B. & C. 556; 4 M. & S. 101; 19 John. 223; 37 Barb. 301.)

If the plaintiff's business was navigating the river, or if the new bridge endangered the safety of the plaintiff's bridge, then a right of action to restrain the erection, or for damages might be maintained, depending on the nature of the injury done or apprehended.

But because a bridge over a navigable stream may be a nuisance to those navigating it, it does not follow that it is a nuisance as to others who do not navigate it.

The plaintiff having no exclusive grant of the right to maintain their bridge and take toll, it follows that every other bridge built over the stream which does not impede navigation, is lawfully erected and is not a public nuisance, and no action for damages will lie for its erection. If it does impede or impair navigation, it is a nuisance as to those navigating, but not to any others. The rights of the plaintiff are not, in contemplation of the law, injured by the new bridge, and hence they are not entitled to either an injunction or damages.

But it is said the defendants could not legally erect their bridge without authority from the legislature, and hence any person injured may resist its erection, or recover damages therefor. There are three cases in which authority from the legislature is necessary to erect a bridge over a stream. One is when the stream is navigable; 2d, when the state owns the bed of the stream; and 3d, when the right to take toll is desired.

It was decided by the court of errors in *The Canal Appraisers* v. *The People* (17 Wend. 571), that the bed of the Mohawk belonged to the state, and of course the defendants have no right to use the property of the state for their own benefit, without its consent. But I do not understand what right the plaintiffs have to complain of this appropriation of the bed of the stream, while the state officers make no objection to it.

I am free to say that I would be glad to see the old common law restored, which denied to the legislature the power to take away or impair a franchise granted by it; but the law is settled the other way, and we must conform to it. If the common law principle was restored, however, it would be no protection to owners of franchises, as under the power reserved by the legislature to amend or repeal its acts, the same result can be attained.

The judgment must be affirmed, with costs.

All the judges concurring, judgment affirmed.