Monell, J. (dissenting.)
The plaintiffs’ right to an injunction in this case, is contested on three grounds: 1st. That the structure erected by them, was and is not a “ pier ” within the meaning of any of the statutes of this state. 2d. That such structure was erected without lawful authority for any purpose, other than as a ferry landing; and 3d. That the limitations contained in the act of 1857, (Sess. Laws of 1857, ch. 763,) have no application to such structure, and do not inhibit the contemplated erection of. the defendants’ pier. The first two objections were, to my mind, satisfactorily disposed of at the special term; .but I cannot concur in the views of the learned chief justice in respect to the third objection.
The second section of the act of 1857, declares that it *312 shall not be lawful * * * to erect any structure, exterior to the bulkhead line, except * * * piers which shall not exceed seventy feet in width respectively, with intervening water spaces of at least one hundred feet * * *.
The act of 1857, was'framed from recommendations made to the legislature by the commissioners appointed in 1855, for the' preservation of the harbor of New York from encroachments, and to preserve the necessary navigation thereof.
The preamble to the act, (Sess. Laws of 1855, ch. 121,) recites,.that “ whereas it is represented-to the legislature that the harbor of . New York has become much obstructed by the erection of piers, wharves, and bulkheads, and by other causes, and that grants of rights to occupy land under its waters have been made, and are liable to be made, without sufficient information of the extent of the injury that maybe inflicted by such occupation * * * ; with a view therefore, of obtaining the proper information to enable th.e, legislature to- control such erections, and prevent such injury.; ” it was enacted, that five commissioners be appointed to ascertain whether the navigation of the harbor was improperly obstructed, and whether any further extension of piers, &c. into the said harbor ought to be allowed; and whether any grants already made, for the filling up of any land under water of said harbor, would,, if executed, impair or obstruct- the necessary navigation of the harbor. The1 commissioners were directed to recommend to the legislature such provisions as they might deem necessary in respect to the size, position and extent of piers &c. within thé' exterior water lines, and the laying out and establishing of such piers, &c. and leaving open spaces between and under them, “ and in respect to any and every matter and thing, calculated to preserve forever the free navigation of said harbor.” The commissioners were required to submit with their report, - maps of the harbor, exhibiting the lines of the existing piers Sye. with such field notes, measurements and elucidations as they might deem necessary, “to a full *313 exposition and understanding of the subject.” The report of the commissioners made in 1857, was accompanied by a map, which they had caused to be made from surveys and examinations of the harbor, upon which map the plaintiffs’ structure was designated by black lines drawn at right angles to the' bulkhead, extending into the river, and by the number “24.” Other structures, which are conceded to be “piers ” being above and below, and near the plaintiffs’ structure, were also designated on such map by similar lines, and by the numbers respectively 22, 23, 27, &c. and are in no way distinguishable upon the map from the plaintiffs’ structure.
Upon the commissioners’ recommendation the legislature established an exterior or pier head line, and provided for building a sea wall north of Seventeenth street, and appropriated the water space, between such exterior line and the bulkhead north of Seventeenth street, for piers on piles, or blocks and bridges, and wet basins; but no provision is made in the act for appropriating any of the water space, between such line and bulkhead south of or below Seventeenth street; from which it is to be assumed that the commissioners did not deem it necessary to recommend, or if they did recommend, the legislature did not deem it expedient or necessary to enact, any law in respect to piers, wharves, or bulkheads below Seventeenth street except the provision contained in the second section; and the probable reason is, that no legislation was deemed necessary, inasmuch as the water space below such street was in 1857, occupied by piers within the exception in the second section.
The object of the commission of 1855, and of the act of 1857, was to control erections in the harbor and to prevent injury thereto. The report and act embraced no other subjects, and comprehended no other purpose, and was confined to needed legislation. Hence, the first section relates to the construction of piers &c. north of Seventeenth street, making no reference. to piers below that point. But the second section is general, and it seems to me, must have *314 a general application, as well to piers thereafter to be erected, as to such as were then in existence.
It shall not be lawful, that section declares, to erect any structure exterior to the bulkhead line except, &c. The language is prospective and relates to piers thereafter to be constructed, without regard or reference to location, and therefore as well below as above Seventeenth street. The limitation embraces all the waters of the port of Ee'w York, beyond the bulkhead line, and was enacted to establish the lines as well of existing piers, as of such as might thereafter be erected. A less comprehensive law would not have subserved the object of the legislature; and if no other effect is to be given to it, than such as is contended for by the defendant,, the commissioners would have reported and the legislature enacted to very little purpose. The whole water space between the bulkhead and the exterior line, below Seventeenth street, could, upon such construction, be filled in “ with earth, stone, or other solid material,” destroying the harbor; or piers could be erected without intervening water spaces of the required dimensions.
It was not intended to interfere with, regulate or restrict piers existing at the time of the passage of the act. The right to such piers had became vested in the owners, and such rights are never divested except by express words. (Butler v. Palmer, 1 Hill, 324. Johnson v. Burrell, 2 id. 238.) On the contrary, the recognition by the legislature of- “ existing ” piers, and its omission to require their removal or alteration, furnishes satisfactory ground for believing that no legislation in respect to them, was deemed necessary. Eevertheless, the prohibition remains. Present piers are not to be disturbed; but does it follow, that others may be constructed without the required intervening water space ? If they can, then the purpose of preventing obstructions in the. harbor is defeated.
■ Suppose it should be declared unlawful to lay out streets except with intervening spaces of two hundred feet; will it be contended that streets may be opened between streets *315 already opened leaving a less intervening space ? Or, if railroads were required to have a prescribed space between their tracks, will it be said, that they may construct another track between those already down, which would reduce the space below the limit ? Yet the erection of the defendant’s pier, would, by reducing the required intervening space between it and the existing pier of the plaintiffs • to less than six feet, be no greater perversion of the law.
The application of the second section of the act of 1857, to existing piers is in effect confirmed by the last clause of the second section of the act of 1860, (Sess. Laws, 1860, chap. 522,) which in express terms excepts piers, &c. built before the establishment of such exterior line. The construction of piers, bulkheads or other structures beyond such exterior line was unlawful by the act of 1857 ; but that act related to such only as might thereafter be extended. The act of 1860 made the maintaining of such structures unlawful. But to exempt existing piers from its operation, it excepted such as existed when the exterior line was established. It is clear that without the exception all piers would alike be subject to the provisions of the act. Hence, as a legislative interpretation, there being no exception in the act of 1857, it must be deemed to apply to all piers alike.
The construction which I claim for the act in question is sustained, upon principle, by the case of Wetmore v. Atlantic White Lead Company, (37 Barb. 70.) In that case an act of the legislature had made it lawful for the owners of certain lands to erect, construct and maintain bulkheads or wharves on the lands under water in front of their lands, as far into the river as the permanent water line established by a previous act; and the question was whether structures erected prior to the act were embraced ; and it was held that the act, although prospective in terms, was intended to and did confirm to the owners of the shore and water front a title .to the lands under water, as far as such exterior line, or to the use of them for existing piers or bulkheads, so far as the *316 state was concerned; and the argument was, that if the structures were removed they might, under the provisions of the act, he immediately and lawfully re-constructed.
Looking, therefore, at the intention of the law makers and the purpose they designed to subserve, and also to the statutes, to which I have referred, which may be regarded in pari materia, it must, I think, be conceded, that no pier or other structure can be erected in the waters of the port óf Hew York unless there can be left an intervening space of water between it and an adjacent pier or structure of the dimensions required by the act.
In the argument, I have assumed that the plaintiffs’ structure was a “ pier” within the meaning of the statute. To be so, it must be a pier dé jure as well as de facto, for the legislature cannot be presumed to recognize an unlawful structure.
The first or original structure erected by the plaintiffs in ■ 1829, was erected without any show of authority, upon Anderson’s land. In 1861, they leased from" Anderson, for a term of twenty years, the pier and bulkhead; which lease confirmed their title, to the franchise and property previously erected by them, and under which they have continued in uninterrupted possession. In 1845,, they obtained from the corporation a grant of the exclusive use of the pier, for a period of two years; and in 1852, a further grant of such exclusive use during the pleasure of the common council. Such last grant was' for “ ferry purposes,” with privilege of piling and bridging on the south side; • with permission to remove their ferry boats, rack - and' fixtures to the outer end of the pier and platform. The license or grant obtained in 1852, has not been revoked or annulled, and it is enough to say, that the plaintiffs’ right to such exclusive use, has repeatedly been reeognizéd and admitted by the-corporation, in maps and by the imposition of taxes, assessments and otherwise, amounting to an estoppel from disputing the plaintiffs’ title until there is some ' express -revocation of the grant. The question, however, *317 does not rest upon the plaintiffs’ title, but upon the right of the defendant to construct his proposed pier. If the views I have expressed are correct, and the plaintiffs’ structure is a “pier” within the act óf 1857, then neither the corporation, even if in possession, nor any person claiming under it, could construct another pier, if the required intervening water space was thereby reduced or destroyed. • And this disposes of all questions relative to the alleged unauthorized or misuse of the plaintiffs’ pier, or its diversión by them from the “ferry purpose” to which the grant was confined. If it is a “pier,” the erection of another pier upon the defendant’s land would be equally in violation of the statute, whether the present structure was the property of the corporation or of the plaintiffs.
I have not found it necessary to examine the question of the plaintiffs’ title as strengthened by an adverse possession. Except as against the state their rights would seem to be vested. (Lansing v. Smith, 4 Wend. 21. Fort Plain Bridge Co. v. Smith, 30 N. Y. Rep. 63.) And until such rights are divested by- the state, or by the common council acting for the state, the plaintiffs cannot be disturbed in the enjoyment of the benefits and emoluments of their property. Nor, in my judgment, is the plaintiffs’ title involved farther than is necessary to give them a status to demand the relief they seek, the sole question being, whether another pier can be erected within one hundred feet of the structure in their possession.
My conclusions are first, that the plaintiffs’ pier was an existing pier at the time of the passage of the act of 1857, and that it was recognized by the commissioners in their report, and by the legislature in said act, as an “ existing ” pier, and that the provisions of said act, so far as they require an intervening water space of one hundred feet between piers, are applicable to such existing piers, and prohibit the erection of any pier, which shall reduce the space between it and any existing pier, to less than one hundred feet; and second, that the erection of the defendant’s pier will deprive the plaintiffs of some portion of their *318 emoluments, producing an injury entitling them to the relief demanded in their complaint.
For these, reasons I think the judgment dismissing the complaint should be set aside and a new trial ordered, with costs to abide the event.
Judgment affirmed.