THE NINTH AVENUE RAILROAD COMPANY, Appellant, *against* THE NEW YORK ELEVATED RAILROAD COMPANY, Respondent.

(Decided April 2d, 1877.)

An injunction against the maintenance of a structure which is a common nuisance, will not be granted at the suit of a party not suffering or in danger of suffering any injury other or greater than all other persons suffer and are likely to suffer from the same nuisance.

Nor for an injury arising from negligence not the ordinary and necessary result of the use of the road.

Nor even if the private party asking for the injunction shows that he has suffered, or is in danger of suffering an injury, other and greater than the rest of the community, will an injunction be granted unless it appears that the injury existing or threatened is of a serious or irreparable character, and there has been diligence in applying.

APPEAL by the plaintiff from a judgment of this court,

entered on a decision made at special term, Judge VAN HOESEN, dismissing the complaint.

This action was brought by the plaintiff, the Ninth Avenue Railroad Company, a corporation operating a horse railroad in the city of New York, against the defendant, a corporation operating by steam an elevated railroad in the same city, and a part of its distance above the plaintiff's road on the same avenue. The relief demanded was an injunction against the maintenance of the elevated road above Thirtieth street, against the use of steam locomotive engines at any point on the elevated road, and against the further erection, or the use of any part of its structure in the carriage way, or that part of the street used by vehicles.

The facts as found by the court at special term will be found stated in the prevailing opinion.

*F. N. Bangs* and *J. M. Scribner, Jr.*, for appellant.

*James Emott, A. J. Vanderpoel* and *E. C. Delavan*, for respondents.

CHARLES P. DALY, Chief Justice.—It must be regarded as settled by the decision of the general term, in the action brought by Patten against the defendants, at least so far as this court is concerned, that the defendants had no authority by law to erect any structure for the extension of their road along the Ninth avenue, north of Thirtieth street; that the authority given by the 10th sec. of the Act of 1867, to extend the road along Ninth avenue to the Harlem River was an authority to do so within five years, and, although at the expiration of the five years, they may have had the right to the use of that which they had constructed until their franchise was forfeited, they had no authority, after the expiration of that time, to continue the construction of the road further; all authority to do so having ceased, as the time limited for its completion by the Act of 1867 had expired, and no authority was acquired under the Act of 1875, the Legislature, under the amended constitution which was then

in force, having no authority to pass a private or local bill, granting to any corporation, association, or individual, the right to lay down railroad tracks, or any exclusive privilege, immunity, or franchise whatever ; and because that act provided for extending the road over streets and places specified and permitted in former acts, and in the *mode, manner* and *form* prescribed in such acts, without inserting these acts, or the parts of them that were thus made applicable. (Amended Constitution of 1875, art. 3, secs. 17 and 18.)

It was urged upon the argument that the decision of the general term in this respect, in the Patten case, was erroneous; that the provision in the Act of 1875, extending the time for the building of the road was not the grant of any new franchise, or of any new right to lay down railroad tracks, but a waiver on the part of the State of the forfeiture, which the legislature might do without violating the provisions of the amended constitution referred to. But whether that decision was right or wrong, it is *res adjudicata* in this court, and must be adhered to under the rule of *stare decisis ;* leaving the error, if it be one, to be corrected by the court of last resort.

But although the structure north of Thirtieth street must, under this decision, be regarded as a common nuisance, being without authority of law, it does not follow that the plaintiffs—the Ninth Avenue Railroad—are entitled to an injunction against the maintenance of it, unless it appears that they have sustained, or will sustain, some peculiar and special injury greater in degree or different in kind from that of the public generally. If they have not, or will not, they have no right of action, because it is a nuisance ; but it is for the attorney general to bring the proper action to abate it in behalf of the people. (*Smith* v. *The City of Boston,* 61 Mass. 254 ; *O'Brien* v. *The Norwich, &c. R. R. Co.* 17 Conn. 372 ; *Irwin* v. *Dixion,* 9 How. U. S. 10.) The plaintiffs can maintain no action except upon the ground that they have or will sustain an injury greater or different from that of the community in general ; nor even then are they entitled to the kind of equitable relief which is sought in this action unless

the injury is of a serious or irreparable character, and there has been diligence on their part in applying for it.

There was no dispute on the argument that this is the law, and in fact, very little disagreement between the counsel as to the rules and principles which must govern in the decision of this case, as they are well settled.

The plaintiffs acquired by their charter the right to lay down rails along the line of their track in the Ninth avenue; to run cars over the track for the carriage of passengers for hire, and a paramount right to the use of the rails when required for the running of their cars.

The plaintiffs say that up to the time of the adoption of the constitutional amendments of 1875, they were the sole owners of this franchise, and that the effect of those constitutional amendments was to make them, not only the sole owners of the franchise, but to give them for that purpose the exclusive right to the use of the particular streets in which they were operating their railroad for the purpose designated in the grant made to them by the State, and they sought to have the defendants enjoined from continuing their structure and operating their elevated road north of Thirtieth street, as they had no authority in law to do so, and the plaintiffs were peculiarly and specially injured in the use of their road and in the discharge of their duties to the public by the construction and operation of the elevated road of the defendants.

The plaintiffs, by their charter, had no exclusive right to the use of the avenue for the running of a street railroad. A grant of such a franchise, to the exclusion of all others, must be especially made in terms by the Legislature and cannot be taken by implication. (*Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44.)

The plaintiffs' franchise did not, by its terms, exclude the Legislature from granting to the defendants a right to construct an elevated railroad along the same avenue, although it might greatly impair or destroy the value of the franchise previously granted to the plaintiffs. (*The Charles River Bridge* v. *The Warren Bridge*, 11 Peters, 420 ; *The Auburn*,

*&c. Road Co.* v. *Douglass*, 9 N. Y. 451, 452, 453.) And whatever may be the effect of the provisions in the constitutional amendments of 1875, in respect to the restraint which they impose upon the powers of the Legislature, it does not follow that the plaintiffs have any other or greater privileges than they acquired by their charter.

The plaintiffs claim that the value of their franchise is greatly impaired by the structure erected by the defendants, and that this is an injury special and peculiar to them that entitles them to have the defendants enjoined from continuing this structure and operating their road over it. The specific injuries which they claim to have sustained are as follows:

1. That the plaintiffs had the use of the avenue on either side of their track in common with the rest of the public. That it was useful and available to enable them to receive and discharge their passengers conveniently; to shift their horses from one car to another; to avoid collision with other vehicles; to turn their horses off the track; to enable other vehicles to get off it easily, when the plaintiffs' superior right to the use of it had to be asserted. That this space has been abridged by the defendants' structure, to the inconvenience and detriment of the plaintiffs, in connecting their railroad. That it impedes access to and egress from their cars. That there is less ease and facility in keeping the track clear of other vehicles, and a greater tendency to crowd the track with other vehicles.

2. That the columns on which the structure stands interferes with the performance of the duty which they are required by their charter to discharge, of keeping the space of two feet on each side of their track at all times in thorough repair.

3. That the projection of the upper part of the defendants' structure, which projects for about one foot and two inches over the roof of their cars as they pass, interferes with the summary mode resorted to by them in winter for removing the snow and ice from their track.

4. That the dripping of water and oil from this upper structure damages the roof of their cars.

5. That the existence of the defendants' structure, and the use of steam-dummies upon it, frightens the plaintiffs' horses, and thus impairs the value of their property.

And lastly, that the effect of this elevated road, which, beyond Thirtieth street, is unauthorized by law, is to divert passengers from their road, who, but for the inducements held out by the elevated railroad, would travel in the plaintiffs' cars.

The judge who tried the cause below has found against the plaintiffs upon all these points; and I think his finding is fully sustained by the evidence.

It justifies the conclusion that the occupation of the space between the defendants' track and the curbstone by the columns on which the defendants' structure rests, subjects the plaintiffs to no other or greater inconvenience than is sustained by the public in general in the use of this part of the street. That in this respect no injury arises from this cause which is special or peculiar to them.

It is shown by the evidence that, notwithstanding these columns or posts, the plaintiffs' facilities for receiving and discharging passengers are as great as they were before these posts were erected, with the simple exception, that it would not be as easy to get off at the point of actual contact with the posts; that the number of convenient stopping places is not at all reduced, as the stopping places are at the crossings of the streets, and the posts are not at the crossings.

All that appears in respect to the removal of ice and snow in winter, is that the plaintiffs cannot use snow-ploughs with the same facility as before. It amounts simply to this: that the snow-ploughs previously used on the Ninth avenue by the plaintiffs, to clear their tracks of snow, cannot be run without being thrown off the track by the columns. It does not follow that the right to use snow-ploughs is a right incident to the plaintiffs' franchise, or that the snow may not be effectually removed from the track by other means, or by snow-ploughs somewhat different in structure, or that those which they have heretofore had in use may not, by some alteration or modification of them, be as effectual as

before.   It is not shown that it is indispensable to remedy this temporary inconvenience, that the defendants' structure must be taken down and removed, which would be the effect of their being perpetually enjoined from using it.

It is not shown that the dripping of oil and water on the roof of the plaintiffs' cars is the ordinary or necessary result of the use of the elevated railroad.   For all that appears in the evidence, it may have been the result of neglect, or the unskillful use of machinery, or some defect in the construction of it; and at best it was a very slight and trifling grievance.   All that was shown on the part of the plaintiffs' was that oil and water sometimes dropped upon and spoiled the canvas upon the roof of the plaintiffs' cars; whilst the effect of the defendants' evidence was that it was not a necessary consequence of the running of their cars, but was rather occasioned by negligence, and the wearing out of the waste used about the journals.

As respects the remedy which is here applied for, to have the defendants' enjoined from any further use of the road on this account, the maxim might be applied, as the defendants' counsel suggests : " *De minimis non curat lex.*"   Or if this injury was sufficiently serious to require the interposition of a court of equity by injunction, it would not be to prohibit the running of the cars, but to restrain the use of such materials, or defective machinery, to prevent the canvas with which the roof of the plaintiffs' cars is covered from being soiled.

We are not referred by the plaintiffs' counsel to anything in the testimony, which shows that the plaintiffs cannot keep the two feet of the street on either side of their track in repair as effectually as before, and as the plaintiffs' counsel has not referred us to any such testimony, we may assume that no such evidence was given, without going through the whole of the testimony (which fills a large octavo printed volume), to discover if there be any.

As to the effect of the structure, and of the running of cars over it by steam, upon the plaintiffs' horses, the judge below has given a complete answer.   After reviewing the

evidence upon this point, his conclusion was, that when horses are first driven near to the structure, they exhibit nervousness and alarm, which some never overcome; but that, as a rule, after being a day or two in the neighborhood of the road, they stand without tying under the track as the trains pass overhead, and that at the time when the action was tried, the disturbance to the plaintiffs' horses was so slight as to be almost inappreciable ; the whole of which is sustained by the evidence.

It was not shown by the testimony that any passenger who had traveled by the elevated road, would, but for that road, have traveled in the plaintiffs' cars, and paid fare to them ; and it was conceded upon the argument, that the plaintiffs' receipts upon their road have not diminished since the elevated railroad has been running. It does not appear, therefore, that the elevated railroad has diverted passengers from them, or, as a competing road, that it has diminished the pecuniary value of their franchises, their receipts not having diminished. This is sufficient to entitle the defendants to an affirmance of the judgment, without considering the additional reason given by the judge below, that it is more than three years since the defendants began the construction of their road ; that the plaintiffs' having their own road in the same avenue, necessarily knew what the defendants were doing, and having suffered them, without complaint, to go on for a considerable time in putting up a continuous and expensive structure, they cannot afterwards apply to a court of equity to have them enjoined from using what they have erected without any objection or complaint being, in the course of the erection, made by the party afterwards claiming that he has or may be injured by it; a just and equitable rule that has been recognized and applied in numerous cases. (*Jones* v. *Royal Canal Co.* 2 Molloy, 319 ; *Odlin* v. *Gove*, 41 N. H. 465 ; *Wood* v. *Sutcliffe*, 2 Sim. N. S. 163 ; *Birmingham Canal Co.* v. *Lloyd*, 18 Ves. 515; *Ripon* v. *Hobart*, 3 My. and Keen, 169 ; *Binney's case*, 2 Bland Ch. 99 ; *Southard* v. *Morris Canal Co.* 1 N. J. Eq. [Sax.] 518; *Hulme* v. *Shreve*, 4 id. [3 Green] 116.)

Whatever injury has arisen, or may arise, from this un-authorized structure, the plaintiffs share in common with the public. The remedy for it is an action by the attorney-general on behalf of the people. They have not shown that they sustain any greater or different injury than may arise to any one in the use of the street. So far as there has been any loss or injury to them, it has either been of a very trivial kind, or such as can be fully repaired by an action for damages. It has not been of a character to justify this court in interposing its equitable power to stop the further running or use of the elevated road, upon the sole ground of the great, peculiar or irreparable injury it will or may do to the plaintiffs' road.

The judgment should be affirmed.

LARREMORE, J., concurred.

JOSEPH F. DALY, J., dissented, holding that so far as the columns immediately adjoining the plaintiffs' tracks were concerned, the decretal injunction should have been granted.

Judgment affirmed.