## UNION BRIDGE CO. *v.* SPAULDING & a.

A charter giving the right to erect a bridge across Connecticut river within certain limits, and collect tolls, but which contains no words making the granted rights exclusive within the limits named, does not give the corporation a cause of action against land-owners on opposite sides of the river, who open a winter road across their own lands and across the river, within the charter limits, and invite the public to pass thereon, with intent to divert travel from the bridge to the injury of the plaintiffs.

CASE, for making and opening a winter road by the defendants over their own land, and across the Connecticut river, from a highway in Lancaster to a highway in Lunenburg, Vt., within the limits of the plaintiffs' charter, and putting up a sign whereby the public were invited to pass over, the road so opened instead of passing over the plaintiffs' toll-bridge, with the intent to injure the plaintiffs by diverting travel from their bridge, and so depriving them of their just toll. The plaintiffs are a corporation organized under a charter granted in 1870, which gives them authority to build a bridge across Connecticut river between the northerly line of Dalton and a point in Lancaster above where the road complained of was opened. Facts agreed for the opinion of the court.

*W. & H. Heywood*, for the plaintiffs.

*Drew, Jordan & Carpenter*, for the defendants.

BINGHAM, J. The act of incorporation authorized the plaintiffs to construct a bridge over the Connecticut river between two given points, and gave them the right to take tolls to reimburse them for expenditures in building and keeping the bridge in repair. Laws 1870, c. 86.

The plaintiffs organized in 1870, and built a bridge within the limits named in the charter. The defendants owned farms on opposite sides of the river within the limits, about a mile above the bridge, and in the winter opened a road from the highway in Vermont to the highway in New Hampshire, across their farms and the river, and invited public travel.

The charter being recent, and no prior right of public passage existing, either by grant or prescription, the right of the plaintiffs is only that conferred by the charter; and the plaintiffs claim that that one is the exclusive right to the ordinary travel across the river within the chartered limits, and that the defendants are liable in damages for diverting it. Does the charter give this right, or is the exclusive right of the plaintiffs limited to the space that the bridge and its suitable connections occupy, and to the right to take toll of those who pass over the bridge?

The charter gives no exclusive right in terms, and it becomes

important to ascertain what the intention of the legislature was in granting it, that its language may be correctly interpreted. The general rule is, that in governmental grants nothing passes by implication. This was so in England; and the reason of the rule is much stronger in a republican government of legislative grants, as they actually come from the people in their sovereign capacity. Private charters may be a limitation of legislative power, and clearly are so, if they give exclusive privileges in such form as to bind succeeding legislatures. Let this be as it may, there is little doubt that public grants are construed less favorably to the grantee than private ones.

If the legislature intends to give an exclusive right, it has the power to grant it expressly; and if the grantee desires such a right, he may require it to be expressly granted, and if denied he need not accept the grant.

In this state the exclusive right to build and repair between given points has been given in toll bridge charters; and the absence of such a provision is the exception rather than the rule, and indicates an intentional omission on the part of the legislature. It seems to have been the understanding, that if a party intended to secure himself against competition like that complained of by the plaintiffs, he must obtain a provision in his charter giving him the exclusive use; and if no such provision is found in it, it may well be held that it was intentionally omitted. *Piscataqua Bridge* v. *N. H. Bridge*, 7 N. H. 35, 59, 61, 67. In this case the exclusive right was granted between given points; but the court recognize the doctrine, that charters like the one in the case at bar give an exclusive right only to so much in width as the bridge and its connections may occupy. *Bridge Co.* v. *Smith*, 30 N. Y. 44.

In Massachusetts, in a case involving the meaning of a legislative charter in which there was no express exclusive right, it was held by a majority of the court, in substance, that such a charter gives no exclusive right, either express or implied, beyond the limits of the bridge itself, with the right to take tolls of such persons as might choose to pass over it. *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 344, 346, 459, 470, 476. The views of the majority of the Massachusetts court were affirmed in *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, and this opinion of the supreme court of the United States has since been followed as a leading case.

Our conclusion is, that the facts claimed by the plaintiffs show no violation of their legal rights by the defendants. The fact that a new way was opened that caused a diminution of the plaintiffs' profits is not sufficient. It must go further, and prove that the new way was established within the range of its exclusive right.

*Case discharged.*

CARPENTER, J., did not sit: the others concurred.