photograph by the defendants; and the defenses in each action were demurred to and the demurrers sustained. But those decisions were based upon the fact of the plaintiff's infancy; for, as said in the case against Wanamaker, supra, 126 App. Div. 657, 111 N. Y. Supp. 90:

"The plaintiff is an infant, and on the facts pleaded she is not estopped from invoking the protection awarded to her by the act in question."

It seems to me that the cases cited are not an authority in support of the plaintiff on this motion.

Motion denied, with $10 costs.

---

PEOPLE ex rel. TOWN OF SCARSDALE v. BOARD OF SUP'RS OF WESTCHESTER COUNTY.

(Supreme Court, Appellate Division, Second Department. February 23, 1912.)

COUNTIES (§ 23*)—BOUNDARIES—DETERMINATION—REVIEW.

Const. art. 3, §§ 26–28, provide for boards of supervisors in the several counties, the powers of which with reference to local legislation and administration shall be prescribed by law. Laws 1849, c. 194, vesting in the board of supervisors certain legislative powers, provides first for the alteration of the boundaries of a town or the erection of a town, points out the procedure, which involves application, notice, and publication of favorable action with the acts of the Legislature, and, as amended by Laws 1870, c. 361, authorizes such boards to fix, establish, locate, and define disputed boundary lines between the several towns of their respective counties, by resolution to be duly passed by a majority of all members elected. *Held*, that the determination of the location of a disputed boundary line between two towns by resolution of a board of supervisors was legislative, and not judicial, in character, and was therefore not reviewable by the courts.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 23.*]

Certiorari by the People, on the relation of the Town of Scarsdale against the Board of Supervisors of Westchester County. Dismissed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Albert Ritchie (William Cravath White and Charles H. Young, on the brief), for relator.

Charles A. Van Auken, for respondent.

THOMAS, J. This proceeding to review the determination by the board of supervisors of Westchester county of the disputed boundary line between the relator and the city of New Rochelle presents the preliminary inquiry whether its act was legislative, precluding this appeal, or judicial, permitting it. If it was judicial, there would follow the questions whether the board did "establish and define" a line, within the meaning of section 36, Laws 1892, c. 686, now section 37 of the county law (Consol. Laws, c. 11), and whether it did "establish and define" the line in accordance with the facts shown in the

record. It is considered that the answer to the first inquiry disposes of the appeal.

Although boards of supervisors exercise in instances judicial powers, they are primarily legislative bodies, recognized and classified as such by the Constitution. While supervisors pre-existed the first Constitution of the state, where they are mentioned (Const. 1777, § 29), and while they were empowered by the Constitution of 1821 to participate in the appointment of justices of the peace (article 4, § 7), yet it was not until the Constitution of 1846 that the governmental nature of boards of supervisors was indicated, which was done by classifying them as legislative bodies, and it is directed that they make certain divisions for the purposes of Senate and Assembly districts (section 1, art. 3), and it is provided that "the Legislature may confer upon the boards of supervisors of the several counties of the state such further powers of local legislation and administration, as they shall from time to time prescribe" (article 3, § 17), and also may confer on them the appointment of county officers (article 10, § 2). This elemental legislative characteristic was determined by the adoption in 1874 of amendments to the Constitution as follows (article 3):

"Sec. 22. There shall be in the several counties, except in cities whose boundaries are the same as those of the county, a board of supervisors, to be composed of such members, and elected in such manner, and for such period, as is or may be provided by law. In any such city the duties and powers of a board of supervisors may be devolved upon the common council or board of aldermen thereof.

"Sec. 23. The Legislature shall, by general laws, confer upon the boards of supervisors of the several counties of the state such further powers of local legislation and administration as the Legislature may from time to time deem expedient.

"Sec. 24. The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant an extra compensation to any public officer, servant, agent or contractor."

These sections correspond generally to the present Constitution (sections 26–28, art. 3). It may be noticed that by present section 26 the bodies upon whom the duties of boards of supervisors may be devolved are legislative, and are so described. It was to such bodies, endowed with primal legislative nature by the Constitution, that the statute granted certain powers, which it then and there declared to be legislative, by enacting chapter 194, Laws of 1849, entitled "An act to vest in the board of supervisors certain legislative powers, and to prescribe their fees for certain services." The act makes a first provision for the alteration of the bounds of a town or the erection of a town, and points out the procedure, which involves application, notice thereof, and publication of favorable action with the laws of the Legislature. The duty so delegated was essentially legislative, and was such as the Legislature was wont to exercise, viz., the subdivision of counties. And it will be remarked that the further acts by that statute authorized are such as a legislative body would do, and such as an executive or judicial officer, or a court, would not do.

In 1870 the statute was amended by chapter 361, entitled "An act to amend an act entitled 'An act to vest in the board of supervisors certain legislative powers, and to prescribe their fees for certain

services,' passed April third, eighteen hundred and forty-nine," and thereby an additional subdivision was added to section 4 of the original act in part as follows:

"15. To fix, establish, locate and define disputed boundary lines between the several towns in their respective counties, by a resolution to be duly passed by a majority of all the members elected to such board."

The procedure is, in its trend, similar to that in the statute provided for the alteration of the bounds of a town and the erection of a town, and indicates a legislative act done in a way prescribed. When, therefore, there is found a duty falling within those of the legislative branch of the state, for certainly it does not belong to the executive or judicial department, delegated to a board of supervisors, recognized and classified in the Constitution as a legislative body, and granted by a statute which declares that it is a legislative power, a judicial nature can be ascribed to the duty only upon clear and convincing evidence, even if it may be done at all. While it does not directly affect the present inquiry, it may be noticed that by chapter 559, Laws of 1910, the Legislature did fix the line as the board of supervisors defined it. But it illustrates that the act and power were legislative in nature.

But it is urged that the board was empowered to find the true line by evidence, and that the line determined must be adjusted to the proof. Wherefore, as argued, the act is bereft of a legislative complection and given the color of judicial finding. The statute does not require evidence to be taken, but it does require notice of application to be given. The board may then—should then—hear, and upon such hearing it may fix the line. Thereupon there would be no record to be brought to this court. But the board preferred to hear, not through persons appearing alone, but through those that should speak to it under oath and advise them of their knowledge. The board did not thereby deprive itself of its power to act without the evidence, nor thereby does its power become subject to judicial review.

In determining whether the power was legislative or judicial, we do not consider whether the board acted wisely, providently, or as men would who wished to be best informed and to be influenced by whatever they learned, but whether its power was so judicial in its quality as to require action conformable to judicial procedure, and so subject to review. An act does not become judicial simply because it involves discretion, hearing, and determination, and when something like a judicial hearing is adopted by a body, not obligated to such course, the power is not thereby changed in its nature. The boundary between the two towns is in dispute. Upon application and certain notice, the board "by resolution" fixes, establishes, locates, and defines the line in dispute, and the resolution with map is filed, and the resolution published with the laws of the next Legislature. What heed of facts it shall take, whom it shall consider, how thoroughly it shall inquire, these are matters of personal conscience and official duty, but not of judicial supervision. The evidence in this case illustrates the wisdom of confiding the question to the aggregate knowledge and judgment of the supervisors of the county, to officials

with opportunities to have learned or to learn what may be known or understood by the inhabitants of the locality, and to act thereon without the nice rules of evidence and accurate conclusions therefrom that are expected to obtain in methodical trials by judicial officers.

There is here involved a zone of land some 400 feet wide between the towns, and whether the ancient line is to the east or west of such zone the taxpayers therein, some or all, dispute. Inquiry discloses the claims of the parties, and the facts established or claimed to be established whereon the claims depend. But the ascertainment of the truth is baffled by a confused mass of narratives of men and events; some things appearing distinctly, some doubtfully, some dimmed beyond usefulness by the faded recollections of the narrators, while actual, dependable, but necessary knowledge has been lost by the death of those who had it. It was to fix a line so disputed that the board of supervisors set itself, pursuant to the power, to solve it as a legislative body would do it, untrammeled by aught save a conscientious use of material and opportunity.

The writ of certiorari should be dismissed, with costs and disbursements to respondent. All concur.