THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* THE DELAWARE AND HUDSON COMPANY, Respondent.

Navigable waters — nuisance — when obstructions in navigable streams constitute a public nuisance — bridge over navigable waters — consent therefor must come from legislature or authority delegated by legislature.

1. The title to the bed of navigable streams and the control of navigable waters are vested in the state, subject to the limitations found in the Federal Constitution. The state, except for such limitations, has power to grant the title to lands under water,

unconditionally or conditionally, or it may grant special rights therein, or it may restrict the boundaries of navigable waters by defining the same.

2. The bulkhead line established by chapter 689 of the Laws of 1906, along each side of Island creek, a navigable stream having its source at and its outlet into the Hudson river near Albany, determines the point beyond which wharfs, docks and piers cannot be lawfully erected, and it fixes and defines the boundaries to be devoted to the navigable channel. An obstruction outside of that bulkhead line is an interference with the public highway and a nuisance *per se*.

3. This action is brought primarily to remove a public nuisance in navigable waters and should be restricted to that claim. It is sustained so far as the navigable waters are defined by the bulkhead lines. It is not sustained so far as it relates to the lands inside of said lines, since an encroachment or filling within the bulkhead line may or may not be a public nuisance. It would be a lawful act on the part of an absolute owner of the adjoining upland, if the filling was for the ultimate purpose of erecting a wharf or dock, and of securing access from such adjoining uplands to it.

4. As the general control of navigable waters is vested in the state, consent to bridge Island creek must come from the legislature, unless the state through the legislature has delegated its power to give such authority. It has not delegated such authority to the courts, but the Railroad Law (Cons. Laws, ch. 49, § 8; L. 1913, ch. 743), provides that such a structure may be erected on obtaining consent of the public service commission.

*People* v. *Delaware & Hudson Co.*, 154 App. Div. 909, modified.

(Argued October 12, 1914; decided December 8, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 10, 1913, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas Carmody, Attorney-General* (*Wilber W. Chambers* of counsel), for appellant. The Supreme Court

of this state has no authority to permit or authorize the erection of a bridge over a concededly navigable stream. (L. 1910, ch. 481, §§ 8, 21.)   The judgment of the trial court directing that defendant remove at its own expense the filled-in portions of the creek was right and should be reinstated.   The judgment of the Appellate Division that defendant is required only to remove the filled-in portions of the creek to the bulkhead line is erroneous and unauthorized both upon the facts established and in principle. (*People* v. *Vanderbilt*, 26 N. Y. 287; *People* v. *Vanderbilt*, 28 N. Y. 396; *People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71; Gould on Waters, 273; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Blakeslee* v. *Comrs.*, 135 N. Y. 447; 1 Farnham on Water & Water Rights, 511; *Turner* v. *Mobile*, 135 Ala. 73; *I. C. R. R. Co.* v. *Illinois*, 146 U. S. 388; *Matter of City of Buffalo*, 206 N. Y. 319.)

*Lewis E. Carr* for respondent.   Assuming the banks on each side of this creek have been, by filling along them, extended into the channel beyond the original shore lines, it was competent for the legislature to establish new shore lines corresponding with the ones in fact existing when it so established them.   That the legislature did, by chapter 689 of the Laws of 1906, and there is no evidence in the case showing any filling in or extension of the banks by the defendant beyond the lines so established.   After the law of 1906 was passed the state could maintain no action against the defendant for any filling in between the original shore lines and those described therein.   (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Williams* v. *Mayor, etc.*, 105 N. Y. 419; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605; *Elsey* v. *Metcalf*, 1 Den. 323; *King* v. *McKellar*, 94 N. Y. 317; *Miller* v. *King*, 88 Hun, 181; *Rumsey* v. *R. R. Co.*, 133 N. Y. 79; *Saunders* v. *R. R. Co.*, 144 N. Y. 75; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Thousand Island Steam-*

*boat Co.* v. *Visger,* 179 N. Y. 206; *Yates* v. *Milwaukee,*
10 Wall. 497.)

CHASE, J.   This action is brought to abate an alleged
public nuisance and to have it adjudged that certain
embankments which it is alleged in the complaint the
defendant erected in the waters of Island creek and also
a certain trestle bridge which the defendant had erected
across said stream interfered with and obstructed naviga-
tion and that they were purprestures and public nuisances,
and to restrain and enjoin the defendant from continuing
to encroach upon the bed and waters of said stream and
also to compel it to remove forthwith at its own cost and
expense the encroachments and obstructions which it
had placed in said stream and restore it to its original
condition.

Issues were joined and, at the trial judgment was
obtained substantially as asked for in the complaint
except that it was therein provided "that the defendant,
as a condition of being required to remove its said bridge
and trestle and the piles supporting it, and of restoring
Island creek to its former depth and width, be permitted,
when that is done, to build a draw, lift or suspension
bridge at the place of the present bridge, which will not
interfere with the navigation of such creek and which
will afford necessary railroad connection to Rensselaer
island."

The People did not appeal from said judgment, but the
defendant appealed to the Appellate Division where the
judgment of the Trial Term was modified so as to limit
its provisions, relating to the removal of alleged encroach-
ments and obstructions, to such removal within the
boundaries of the stream as defined by certain bulkhead
lines established by chapter 689 of the Laws of 1906, and
by further modifying its provisions so as to give the
defendant at its election the right to "build a bridge
supported upon piers at practically the place of the old

bridge, which shall leave an open clearance over the thread of the stream of not less than fifty feet in width and at least two feet greater in height than the present bridge, and that in case the appellant shall elect to build a bridge other than a drawbridge, the respondent shall have the right at any time, should the reasonable use of the stream for navigation require, to apply to the court for a modification of the decree entered hereon, by requiring the defendant, its successors and assigns, to so change the bridge as the public interests may seem to demand." It is from the modifications of the judgment that the People appeal to this court.

Island creek is a navigable stream about three or four miles long, having its source at and its outlet into the Hudson river. It is in part the southerly boundary of the city of Albany, and in such part it is included within the territory of said city. It bounds Rensselaer island on the north, west and south. There is an ordinary highway bridge crossing the creek from Green street in the city of Albany to said island. Although a navigable stream in which the tide ebbs and flows, which has been used as such from time immemorial, its use as such has been confined to pleasure boats and occasional boats with steam power drawing from four to five feet of water. Prior to 1870 the Albany and Susquehanna Railroad Company obtained the title to the lands on each side of said creek from a point near said bridge, westerly and southerly to a point south of the trestle railroad bridge referred to in the judgment. The title thus obtained by said railroad company is in part a title in fee and in part the ordinary title of a railroad corporation for public use. About 1870 said railroad company leased its railroad property and rights to the defendant company. About 1871 or 1872 the defendant erected a trestle bridge to support a single railroad track diagonally across said creek, which trestle or bridge was supported by wooden piles driven into the bed of the stream. The bridge was erected to enable the

defendant, by a spur track, to transport freight to and from certain industrial plants or factories that had been erected upon said island. About 1901 the old trestle bridge was taken down and a new one erected on which two railroad tracks were placed to be used in connection with two spur tracks running to said plants or factories. Such spur tracks are the only connection by railroad with said island and said plants or factories.

It is found by the trial court in substance that the defendant filled in certain parts of the lands between low and high-water mark adjoining its real property on each side of said creek. It is also found by the trial court that the legislature, by chapter 689 of the Laws of 1906, passed an act entitled "An act to provide for the improvement of the river front in the city of Albany," and in substance that by said act a bulkhead line was fixed and established on each side of said creek at a point outside of high-water mark.

The title to the bed of navigable streams and the control of navigable waters are vested in the state, subject to the limitations found in the Federal Constitution. (*Langdon* v. *Mayor, etc., of N. Y.*, 93 N. Y. 129.) The state, except for such limitations, has power to grant the title to lands under water, unconditionally or conditionally, or it may grant special rights therein, or it may restrict the boundaries of navigable waters by defining the same.

The bulkhead line along each side of said creek determines the point beyond which wharfs, docks and piers cannot be lawfully erected, and it fixes and defines the boundaries to be devoted to the navigable channel. An obstruction outside of the bulkhead line is an interference with the public highway and a nuisance *per se*. An encroachment or filling within the bulkhead line may or may not be a public nuisance. It would be a lawful act on the part of an absolute owner of the adjoining upland, if the filling was for the ultimate purpose of erecting a wharf or dock, and of securing access from such adjoin-

ing uplands to it. (*Langdon* v. *Mayor, etc., of N. Y., supra; Williams* v. *Mayor, etc., of N. Y.,* 105 N. Y. 419.)

If the lands between high-water mark and the bulkhead lines were actually covered by navigable water, the public would have a right to use such water for the purpose of navigation until such land was filled in for a lawful purpose and its unauthorized obstruction would be a public nuisance. The record does not warrant a finding that the lands on which the defendant placed earth and other substances inside the bulkhead lines were ever sufficiently covered by water so as to be actually navigable and the Trial Term did not so specifically find.

As we have seen, the title of the railroad company to a portion of the adjoining land is an unrestricted fee. Although not decided, in *Matter of City of Buffalo* (206 N. Y. 319) a majority of the court did not dissent from the opinion expressed in the concurring memorandum therein by CULLEN, Chief Judge, to the effect that a railroad corporation may have riparian rights adjoining lands held in unrestricted fee. The riparian rights incident to the ownership of the upland exist in this case either in the defendant or in others. We are not now required to pass upon the question whether the state, by establishing the bulkhead lines, gave the defendant the right to occupy and use the lands between high-water mark and said bulkhead line for public purposes other than for the purpose of maintaining a wharf or dock at said bulkhead line, and of having access thereto as stated in the *Langdon* and *Williams* cases.

We must assume that the legislature, in fixing the bulkhead lines, took into consideration the needs of the public in navigating the creek as well as the use by the public of the wharfs or docks to be erected along its sides, and that it determined that sufficient navigable waters for the use of the public were included within said lines.

If the filling placed on said lands by the defendant should be removed by it, pursuant to the provisions of

the Trial Term judgment, it could be immediately returned by the owner of the riparian rights in a lawful effort to obtain access to a wharf or dock to be built along the bulkhead line. There can be no good reason for such an idle expenditure particularly unless it is shown that in the meantime the actual navigation of the creek will be materially interfered with if the filling inside of the bulkhead lines remains as it is at the present time.

The Appellate Division has refused to sustain that part of the judgment requiring the defendant to remove the filling inside of said bulkhead lines.

There is nothing in the case of *People* v. *Vanderbilt* (26 N. Y. 287) that requires the removal of the filling under the circumstances of this case so far as the same is within the bulkhead lines.

In that case the " crib " was sunk in the harbor of the city of New York and outside of the bulkhead line and in water actually in use for navigation. The statements made by Judge SELDEN in his opinion in that case relating to that part of the judgment requiring the removal of the " crib " even if it was within the bulkhead lines, were wholly unnecessary to the decision of the case, and but a minority of the court concurred in his opinion. This action is brought primarily to remove a public nuisance in navigable waters and should be restricted to that claim. It is sustained so far as the navigable waters are defined by the bulkhead lines. It is not sustained so far as it relates to the lands inside of said lines. The claim that the defendant has trespassed upon the lands of the state inside of the bulkhead lines and at a point where at the time of the alleged trespass the waters were not in fact navigable, is not within the issues tendered by the complaint. The restrictive part of the judgment should remain as provided by the Trial Term, but upon all the facts appearing in the record the defendant should not be required in this action to remove the filling inside of said lines. The questions between the People and the

defendant, with reference to the occupancy of or trespass upon the lands below high-water mark and within the bulkhead lines, should be determined in an action alleging such trespass and directly attacking the occupancy by the defendant of said lands, unaffected by the question of an actual interference with navigable water and unprejudiced by the decision in this case.

Another question is presented by that part of the judgment relating to the bridge. The bridge is for use to support spur tracks running to said island. They are branch tracks from the defendant's main track which we assume are not specifically included in the designation of its terminals. It is not claimed by the defendant that specific authority has ever been obtained by it for the erection of the bridge. It has been found that the bridge erected by the defendant was an obstruction to navigation and a public nuisance.

As the general control of navigable waters is vested in the state, consent to bridge Island creek should come from the legislature (*Fort Plain Bridge Company* v. *Smith*, 30 N. Y. 44, 63; *People* v. *Gutchess*, 48 Barbour, 656) unless the state through the legislature has delegated its power to give such authority. It has not, so far as has come to our notice, delegated such authority to the courts.

The Railroad Law (Cons. Laws, ch. 49) section 8, so far as now material provides:

"Subject to the limitations and requirements of this chapter and of the *public service commissions law* every railroad corporation, in addition to the powers given by the general and stock corporation laws, shall have power:

"1. * * *

"2. * * *

"3. * * *

"4. * * * To construct its road across, along or upon any stream, water course, highway, plank road,

turnpike, or across any of the canals of the state, which the route of its road shall intersect or touch."

Section 21 of the Railroad Law now provides generally that " * * * A railroad corporation may construct and maintain a bridge for the purposes of its railroad, over any creek within this state, navigated as aforesaid, provided that the consent of the public service commission be granted * * *." (Inserted in the section by chapter 743 of the Laws of 1913.) The defendant should make application to the public service commission for consent to erect a bridge at the point in question, and to provide the form and dimensions thereof. The judgment so far as appealed from should be modified by striking out the part thereof relating to the bridge and by inserting in place thereof a provision that the defendant, on obtaining the consent of the public service commission, may erect a new bridge over said creek of the form and dimensions to be determined by said commission, and as thus modified the judgment of the Appellate Division should be affirmed, without costs.

WERNER, HISCOCK, COLLIN, MILLER and CARDOZO, JJ., concur; HOGAN, J., dissents.

Judgment accordingly.