EDWARD K. MACRUM and Others, Plaintiffs, *v.* BOARD OF SUPERVISORS OF COUNTY OF SUFFOLK and Others, Defendants.

Supreme Court, Suffolk County, September 2, 1931.

M. E. Harby, for the plaintiffs.

*Vunk & Carleton*, for the defendant Dennis G. Homan.

*Guy O. Walser* [*Joseph Stevens Frank* of counsel], for the other defendants.

JOHNSTON, J. Plaintiffs are taxpayers. Defendants are members of the board of supervisors and the treasurer and superintendent of highways of the county of Suffolk.

Plaintiffs seek an injunction enjoining the issue of $5,000,000 in bonds and the expenditure of their avails and also pray for a declaratory judgment decreeing among other things that the ordinances creating the funded debt are invalid. The proof is largely documentary and nearly all the facts conceded.

The ordinances provide for public improvements throughout the county, more particularly (1) for the construction of county roads and two bridges to connect Shelter Island with the mainland; (2) for the construction of a county road and bridge at Smith's Point; (3) for the acquisition of land for parks and parkways in connection with the program of the Long Island State Park Commission; (4) for dredging certain harbors, rivers, inlets and waters in the various towns, and (5) for the development of the Holtsville Tuberculosis Sanitarium. Each ordinance also provides that bonds be issued to meet the cost of the improvement.

While it is conceded the supervisors had the power to adopt these ordinances, it is urged their action was hasty and ill-advised and also that so comprehensive and expensive a program of public improvements should not have been undertaken without first submitting it to a referendum of the electors. These, however, are matters with which the court has nothing to do. The board of supervisors is the local legislative body and within the limits of its delegated power is clothed with the sovereignty of the State to legislate as to all details precisely the same as the Legislature

might have done. It is presumed that legislative action has been devised and adopted upon adequate information. (See *Kittinger* v. *Buffalo Traction Company*, 160 N. Y. 377.)

In the absence of fraud the discretionary acts of public officials are not subject to judicial review or control. There is no evidence of fraud, corruption or dishonesty on the part of any supervisor. Therefore, the question to determine is were the ordinances legally adopted.

The board consists of ten supervisors. On March 30, 1931, each ordinance was passed by a vote of nine to one. Plaintiffs contend, however, the ordinances are invalid because the defendants Warta, Neville and Hildreth were not eligible to vote, and, therefore, the ordinances did not receive the vote of two-thirds of all the members elected to the board as required by section 6 of the General Municipal Law. This claim is predicated upon the fact that one year prior to the adoption of the ordinances and pursuant to chapter 539 of the Laws of 1925 (General Municipal Law, section 239-b), the board of supervisors established a county planning board and appointed the three defendants above named members of it.

It is urged when they qualified as members of the planning board they *ipso facto* resigned or vacated their offices as supervisors. There is no constitutional inhibition or statutory restriction against supervisors holding other public offices. Plaintiffs, however, invoke the common-law rule that when two public offices or trusts are incompatible with each other a person holding the one is not disqualified to be appointed or elected to the other, but his acceptance of the second is in law an implied resignation of the first. This principle is firmly established and generally recognized by the courts of England and this country. (See notes L. R. A. 1917A, pp. 216–250.) It has also been enforced in this State. (See *People ex rel. Sulzer* v. *Sohmer*, 211 N. Y. 565; *People ex rel. Kelly* v. *Common Council*, 77 id. 503; *People ex rel. Ryan* v. *Green*, 58 id. 295; *People ex rel. Earwicker* v. *Dillon*, 38 App. Div. 539; *Matter of Gilroy*, 11 id. 65.)

It may be helpful to pass for the moment the question of incompatibility and consider the statute. It reads:

" § 239-a. Establishment of regional planning boards. Any county or counties and the cities, towns and villages in such county or counties may establish a regional planning board to consist of representatives of such county or counties and of such cities, towns and villages. The members of the board shall receive no salary or compensation for their services as members of such board."

It will be observed the statute provides the regional planning

board is " to consist of representatives of such county or counties and of such cities, towns and villages." It is not necessary to decide if the term *representatives* includes all those bearing an official relation to the municipalities specified, but only, are members of the board of supervisors representatives of the county within the meaning of the statute. Webster defines representatives as " those who represent a people or community in its legislative or governing capacity." Surely the supervisors are the legislative and governing officials of the county. Therefore, I am inclined to the view that the statute expressly authorizes the appointment of supervisors as members of the county planning board. That such was the intention of the Legislature I have no doubt. This is clear from an examination of the statutes enacted prior and subsequent to section 239-b.

Article 12-B of the General Municipal Law (added by Laws of 1925, chap. 539) — of which section 239-b is a part — has never been the subject of judicial interpretation and is not a model of accurate statutory draftsmanship. The powers and functions of the regional planning board, which it permits cities and villages to establish, appear to overlap the powers and functions of the planning commission, which by article 12-A they are empowered to create. But in the solution of the question as to who is eligible for appointment, the overlapping does not obscure identity. Indeed, it almost demonstrates it.

Article 12-A, enacted in 1913 (Laws of 1913, chap. 699), and article 12-B, enacted in 1925, are general acts and relate to the same subject — city and village planning. They are in *pari materia*. It is a fundamental rule that such statutes, although enacted at different times, should be read and construed together for the purpose of learning and giving effect to the legislative intention. It is implied " they are governed by the same spirit and are intended to be harmonious and consistent." (Statutes and Statutory Construction, vol. 1, McKinney's Consolidated Laws, § 67; *Smith* v. *People*, 47 N. Y. 330, 339.) The prior statute expressly permits city and village officials to be members of the planning commission, providing they do not exceed one-third of the total membership.

It is also the rule that subsequent acts in *pari materia* while not of the same value as prior acts, may afford some aid and should be considered in determining the legislative intent of the earlier statute. (Statutes and Statutory Construction. vol. 1, McKinney's Consolidated Laws, § 69.)

The Village Law (section 179-f, added by the Laws of 1926, chapter 719, and amended by the Laws of 1929, chapter 60) also

relates to the same subject — village planning. It empowers the village trustees to appoint a planning board of five members. It also provides if the village has a planning commission created under article 12-A of the General Municipal Law, the trustees may continue the existing commission whose members shall have the powers and duties therein enumerated, in addition to those specified for a planning board. This statute is in *pari materia* to articles 12-A and 12-B of the General Municipal Law and expressly provides: " Of the members of the board appointed two shall be officials of the municipality."

The express provision that members of the planning board shall receive no salary or compensation for their services is not only indicative of the legislative intent, but prudent. It is difficult to believe it would have been inserted unless the Legislature intended municipal officers to serve. It also removes the temptation to appoint themselves merely to secure additional compensation.

In the light of the foregoing, it is unnecessary to consider decisively the question of incompatibility between the duties of a supervisor and the functions of a member of the planning board. " Incompatibility between two offices, is an inconsistency in the functions of the two * * * that from the nature and relations to each other, of the two places, they ought not to be held by the same person, from the contrariety and antagonism which would result in the attempt by one person to faithfully and impartially discharge the duties of one, toward the incumbent of the other." (*People ex rel. Ryan* v. *Green, supra.*) The powers of the planning board are enumerated in the statute. They are limited to studying the needs and conditions of regional and community planning, to prepare plans and to collect and distribute information relative to planning and zoning. The board has no power to initiate or prosecute public improvements. It is authorized only to investigate and recommend. Its recommendations may be accepted or rejected by the board of supervisors. Counsel urges incompatibility arises because under the law the board of supervisors is required to audit all accounts and charges against the county and defendants Warta, Neville and Hildreth as members of the board of supervisors would be passing upon their expenditures as members of the planning board. I do not believe the identity of the accounting and auditing officer is controlling in determining the question of incompatibility, particularly where the auditing officer acts merely as a member of the board. It is likely he would act with propriety and refrain from voting in relation to his own audit.

Moreover, supervisors as a board have the power to audit expenditures they make as individuals. (*Wadsworth* v. *Erwin*, 201 N. Y.

Supp. 311, 312. See, also, *Stetler* v. *McFarlane*, 230 N. Y. 400.) There is also a county auditor who must audit the expenses of county officials and all other bills that are properly chargeable to the county, unless their powers shall be limited by the board of supervisors, and when so audited they shall have the same force and effect as if audited by the board of supervisors and shall be paid by the county treasurer upon the certificate of such auditor or auditors in the same manner. (County Law, § 216.) Hence, the board of supervisors is no longer what plaintiffs call " the ultimate auditing board " since plaintiffs do not claim the board has limited the authority of the county auditor. I perceive no inconsistency or incompatibility in the functions of the offices.

Plaintiffs further claim the ordinance which provides for the construction of county roads and two bridges to connect Shelter Island with the mainland is invalid for the reason that the affirmative authorization of Congress is a prerequisite to the erection of bridges over navigable water. It is conceded the consent of Congress has not been obtained. The Federal statute involved is the River and Harbor Appropriation Act of March 3, 1899 (30 U. S. Stat. at Large, 1151, chap. 425, § 9). It provides: " That it shall not be lawful to construct or commence the construction of any bridge, * * * over or in any * * * navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War: Provided, *That such structures may be built under authority of the legislature of a State across rivers and other waterways the navigable portions of which lie wholly within the limits of a single state, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War before construction is commenced.*" (Italics mine.) ∎

The proposed bridges come directly under the proviso in the statute. The navigable waters across which they are to be built are wholly within the boundaries of the State of New York and the approval of the Chief of Engineers and Secretary of War has been obtained. I hold affirmative action on the part of Congress is not necessary. (See *Hubbard* v. *Fort*, 188 Fed. 987.) The case of *White, Gratwick & Mitchell, Inc.*, v. *Empire Engineering Co., Inc.* (125 Misc. 47; affd., 211 App. Div. 834; affd., 240 N. Y. 648), upon which plaintiffs mainly rely, has no application. There the navigable stream was the Niagara river, constituting the boundary

between the United States and the Dominion of Canada, over which the jurisdiction of the United States is paramount. Moreover, that case involved the construction of sections 10 and 11 of the Federal statute, not section 9, under which the defendants herein proceeded. Plaintiffs also claim the ordinance is invalid because the Legislature by special act has not authorized the construction of the bridges. Such an act would be in contravention of the Constitution. (See *People ex rel. Keene* v. *Supervisors of Queens Co.*, 142 N. Y. 271.) The constitutional amendment of 1874 prohibits the passage by the Legislature of a private or local bill for building bridges except in certain specified cases. It also prescribes the Legislature shall pass general laws providing for the building of bridges. (Art. 3, § 18.)

The power of the State over bridges across its navigable waters is plenary. (*Escanaba Co.* v. *United States*, 107 U. S. 678.) It was said in *People* v. *Delaware & Hudson Co.* (213 N. Y. 194, 202): " As the general control of navigable waters is vested in the state, consent to bridge Island creek should come from the legislature (*Fort Plain Bridge Company* v. *Smith*, 30 N. Y. 44, 63; *People* v. *Gutchess*, 48 Barbour, 656) *unless the state through the legislature has delegated its power to give such authority.*"

The Legislature in express terms has delegated its power and by general law has conferred authority upon the board of supervisors to construct these bridges as part of the county road system (Highway Law, § 250-a, subd. 2; § 320-b, subd. 13). Section 250-a, subdivision 2, reads: " in the construction or reconstruction of county roads * * * where it is determined necessary to construct, * * * a new bridge * * * where none exists, such bridge shall be deemed to be a part of such county road." Section 320-b, subdivision 13, reads: " Notwithstanding the provisions of sections 19 and 262-a of this chapter, or any other statute, *any* bridge located on such county road system, when the same is to be constructed, reconstructed, maintained or repaired with county road fund moneys, shall be considered and deemed for such purposes a part of the road on which it is located; and all the provisions of this section relative to such road shall apply with equal force and effect to such bridge thereon for such purposes."

Plaintiffs concede these statutes may constitute a grant of power to construct bridges, but insist the power is not broad enough to include authority to construct bridges over navigable waters. I know of no case in this State where this precise question has been determined. There is, however, an illuminating dictum in *Markey* v. *County of Queens* (154 N. Y. 675, 683), where the court said: " ' It is the duty of state governments to afford their

citizens all the facilities of intercourse which are consistent with the interests of the community.' To charge the duty of *building* and maintaining a bridge over *navigable* waters upon the boards of supervisors of counties, was but a convenient mode of exercising that governmental function." In support of their proposition plaintiffs cite several cases in other jurisdictions, principally *Commonwealth* v. *Coombs* (2 Mass. 489), decided in 1807, and *Attorney-General* v. *Stevens* (1 N. J. Eq. 369), decided in 1831. These cases hold that a statute giving general authority to lay out highways cannot be extended to lay out a highway and erect a bridge over navigable waters. On the other hand, in Connecticut it has been held that a statute in general terms conferring power to lay out highways, but silent with reference to bridges, carries with it the power to bridge navigable streams as well as waters not navigable. (*Bryan* v. *Town of Branford,* 50 Conn. 246; *Brown* v. *Preston,* 38 id. 219, 223, and cases cited.) I am inclined to follow the Connecticut rule, particularly where the statutes, as they do here, specifically provide that the board of supervisors in constructing roads may construct " a new bridge   *   *   *   where none exists " and also that " *any* bridge located on such county road system, when the same is to be constructed   *   *   *   shall be considered and deemed for such purposes a part of the road on which it is located." It is true these statutes make no special reference to bridges across navigable waters. It is equally true they do not except such bridges and it is a familiar rule of statutory construction that " if there is nothing to indicate a contrary intent on the part of the lawmakers, terms of general import are to receive their full significance. Any exception should be created by legislative enactment, not by judicial construction." (Statutes and Statutory Construction, vol. 1, McKinney's Consolidated Laws, § 66.)

What has been said concerning this ordinance applies with equal force to the ordinance for the construction of a county road and bridge at Smith's Point.

Plaintiffs attack the ordinance providing for dredging as without statutory authority. They argue that chapter 401 of the Laws of 1931,* under which the board of supervisors acted, limits the expenditure of county moneys to dredging in aid of Federal and State projects. The clear expression of the statute negatives this contention.

Plaintiffs' criticism of all the ordinances — except the  one applying to the Holtsville Tuberculosis Sanitarium — because they are not sufficiently specific to meet the requirements of section 6 of the General Municipal Law, is unfounded. The recitals in the ordinances comply in all substantial respects with the statute.

Judgment for the defendants. Submit findings on notice.

---

\* Adding subd. 51-a to County Law, § 12.