TWIN CITY SERVICE STATION, INC., Plaintiff, *v.* CITY OF NORTH TONAWANDA, N. Y., Defendant.

Supreme Court, Niagara County, March 11, 1937.

*Tuttle, Rice, Stockwell & Rice,* for the plaintiff.

*Henry W. Schmidt,* for the defendant.

VAUGHAN, J. Action by plaintiff to recover the sum of $51.01, covering sale price of 537 gallons of gasoline sold and delivered by plaintiff to defendant.

The question determinative in this litigation is whether a supervisor duly elected in one of the wards of the defendant city is a city officer.

By stipulation a jury was waived and the action submitted to the court for determination.

The complaint, after setting forth the incorporation of both the plaintiff and defendant, further alleges: " That at the City of North Tonawanda, N. Y., on or about the 1st day of September, 1936, said plaintiff, at the special instance of the said defendant, sold and delivered to the said defendant goods, wares and merchandise, consisting of five hundred thirty-seven (537) gallons of gasoline at nine and one-half cents (9½c) per gallon, of the reasonable value of Fifty-one Dollars and One Cent ($51.01), which sum said defendant agreed to pay therefor."

By its answer the defendant " admits that the plaintiff delivered to the said defendant goods, wares and merchandise, consisting of five hundred thirty-seven (537) gallons of gasoline at nine and one-half cents (9½c) per gallon, of the reasonable value of Fifty-one Dollars and One cent ($51.01) at the City of North Tonawanda, New York, on or about the 1st day of September, 1936, but that the said defendant specifically denies that said goods, wares and merchandise were sold at the special instance of said defendant or that any officer of said defendant had the power or authority to agree to payment therefor.

" For a First Affirmative and Complete Defense, Defendant alleges:

" 1. That the defendant, The City of North Tonawanda, N. Y., through its officers, agents, servants, and employees could not legally contract with the plaintiff as alleged in paragraph ' 3 ' of plaintiff's complaint, in as much as plaintiff's secretary and one of its chief stockholders, Stephen C. Sarkovics, is an officer of the City of North Tonawanda, N. Y., to-wit: Supervisor of the Sixth Ward of the said City of North Tonawanda, N. Y., he having been duly elected on the 4th day of November, 1935, for a term of two years pursuant to Sections ' 3 ' and ' 6 ' of Title III of Chapter 752 of the Laws of 1907 entitled, ' An Act to Revise the Charter of the City of North Tonawanda ' which said sections read in part:

" Section 3. *Elective Officers*.

" ' There shall also be two aldermen and one supervisor in each ward, who shall be elected by the electors of the ward,' and,

" Section 6 of aforesaid Title III entitled: *Terms of Office*.

" ' Except as otherwise provided herein, the terms of office of the city officers shall be as follows:

" ' The term of office of the mayor, the city treasurer, the aldermen, *the supervisors*, and the city attorney shall be two years.'

" 2. That the said Stephen C. Sarkovics, as such supervisor, he being a city officer of the City of North Tonawanda, N. Y., in his capacity as stockholder, part-owner and officer, to-wit: secretary of the plaintiff corporation, and the plaintiff, Twin City Service Station, Inc., are prohibited from being directly or indirectly interested either as principal, surety or otherwise, in any contract, the expense or consideration whereof is payable out of the City Treasury pursuant to Section 3, Article 2 of the General City Law of the State of New York, the said Stephen C. Sarkovics, being a public officer of the said City of North Tonawanda, N. Y., as therein described and prohibited by the said Section 3, Article 2 of the General City Law of the State of New York, as aforesaid."

The defendant directs our attention to the charter of the city of North Tonawanda, the Constitution of the State of New York, the Second Class Cities Law, the General City Law, the General Municipal Law, and the County Law, which, it claims, style, classify and definitely fix the status of the supervisor in question as a city officer of the defendant city. With such contention we are unable to agree.

The status of a supervisor elected from a city ward depends not upon his classification by charter or statute, but rather upon the duties imposed upon him by law.

" The office must be judged and its character determined by its duties and functions, and the powers and jurisdiction conferred upon the incumbent rather than by the name and title given to it by the act of its creation. (*People* v. *Raymond*, 37 N. Y. 428; *Same* v. *Albertson*, 55 N. Y. 50.) " (*Wenzler* v. *People*, 58 N. Y. 516, 529.)

The term " supervisor," " supervisor of the city," " the supervisor of said city," " supervisors hereafter elected in a city," and " the supervisor of any town or ward of any city," found in the charter of the city of North Tonawanda and the various statutes referred to, are descriptive of a particular office classified as to locality, but not descriptive of function.

In *People* v. *Fuller* (156 Misc. 404) the court, in denying the status of city and county officer to the district attorney of the city and county of New York, held that because of the duties and functions of the office he was a constitutional State officer and that notwithstanding such officials are chosen by the electors of the respective counties and are classified as " local officers " under the Public Officers Law.

In *Spielman Motor Sales Co., Inc.,* v. *Dodge* (295 U. S. 89; 55 S. Ct. 678) Mr. Justice HUGHES, writing for that court, held that district attorneys throughout the State of New York, although classified by State statute as local officers because chosen by electors of only a part of the State, are State officials performing distinctively State functions within their respective counties.

In *Olmsted* v. *Meahl* (219 N. Y. 270) the court held that a county clerk acted in a dual capacity. In the course of this opinion the court said: " The county clerk is a constitutional officer. * * * Although a constitutional officer he is, while in the performance of his general duties as county clerk, a local, viz., a county officer. It is also provided by the Constitution that ' Clerks of the several counties shall be clerks of the Supreme Court, with such powers and duties as shall be prescribed by law.' * * * The county clerk as a clerk of the courts is a State officer and in the performance of his duties as such is performing the duties of a State officer."

Applying the test as laid down by the authorities, it seems too clear for dispute that a supervisor elected from a city ward is not a city officer.

The only case in this State where the question under consideration has come up for decision arose in the case of *Salducco* v. *Etkin* (155 Misc. 361), wherein the court at Special Term in considering the validity of the adoption of the municipal charter and form of government known as Plan C for the city of Schenectady, held that a supervisor elected from a city ward was a city officer. The Appellate Division, Third Department, in reversing the decision of the Special Term said in part (244 App. Div. 681, 684): " A ward supervisor is not a city officer; he is only voted for by the electors of the ward for which he is chosen. It is provided that he shall have the powers and perform the duties of supervisors of towns, but from an examination of section 29 of the Town Law, which sets forth the duties of a supervisor of a town, it is plain that the only one of those duties that a supervisor of a city can perform is that of attending meetings of the board of supervisors as provided in subdivision 14 of section 29 of the Town Law."

Thereafter, upon appeal to the Court of Appeals, that court (268 N. Y. 606), without passing upon the status of a supervisor elected from a city ward, reversed the judgment of the Appellate Division and affirmed that of the Special Term upholding the validity of the adoption of Plan C form of municipal government, not on the ground adopted by the Special Term, however, but upon the ground " that the special election ordered pursuant to section 19 of chapter 444 of the Laws of 1914 was legally held on Election Day (November 6, 1934)."

The charter of the city of North Tonawanda does not assign to a ward supervisor the performance of any administrative or other functions related to the city government.

A supervisor is an elected constitutional officer. (*Williams* v. *Boynton*, 71 Hun, 309; affd., 147 N. Y. 426.)

The Constitution of the State makes no provision for the manner of election or the term of office of supervisor. (N. Y. Const. art. 3, § 26.) Those matters, as well as the duties imposed upon such an official, were left to the Legislature. (N. Y. Const. art. 3, § 27; art. 10, § 3. See *County of Herkimer* v. *Hess*, 240 App. Div. 1013.)

The State Constitution (Art. 3, § 27) providing for the vesting of local legislative and administrative powers in the board of supervisors, reads in part as follows: " The Legislature shall, by general laws, confer upon the Boards of Supervisors of the several Counties of the State such further powers of local legislation and administration as the Legislature may, from time to time, deem expedient."

In commenting upon the provisions of that section of the Constitution above referred to, and the purpose therefor, the court in *People ex rel. Wakeley* v. *McIntyre* (154 N. Y. 628, 632) said:

" Within the limits of this delegated power, the board of supervisors is clothed with the sovereignty of the State, and is authorized to legislate as to all details precisely as the Legislature might have done in the premises.

" The evident intent of the framers of the Constitution in permitting the Legislature to delegate certain of its powers to the local boards was to carry out a public policy which assumes that the interests of a particular locality are best subserved by those who are familiar with its affairs." (See, also, *Matter of Henneberger*, 155 N. Y. 420, 425; *Macrum* v. *Board of Supervisors of Suffolk County*, 141 Misc. 358.)

" Although boards of supervisors exercise in instances judicial powers, they are primarily legislative bodies, recognized and classified as such by the Constitution." (*People ex rel. Town of Scarsdale* v. *Supervisors*, 149 App. Div. 319; affd., 206 N. Y. 636.)

Turning to article 3, section 12, of the County Law, we find the duties of the board of supervisors set forth at length. In general the board is to have care and custody of the corporate property of the county, audit and pay accounts against the county, levy taxes for county purposes, fix salaries, borrow money, purchase and lease real property, provide for jury districts, make appropriations in aid of various educational, charitable, agricultural institutions and organizations, and many other powers related solely to county purposes.

If further facts be necessary to establish that a ward supervisor is not a city officer, we call attention to article 3, section 11, of the County Law, which provides: " If any supervisor shall refuse or neglect to perform any of the duties which are or shall be required of him by law, as a member of the board of supervisors, he shall for every such offense forfeit the sum of two hundred and fifty dollars to the county. For a refusal or neglect to perform any other duty required of him by law he shall for every such offense forfeit a like sum to the town."

The language above quoted negatives any possible claim that a ward supervisor is a city official. For neglect to perform any of the duties required of a supervisor as a member of the board of supervisors, it is provided that he shall forfeit the sum mentioned to the county, and for the " refusal or neglect to perform any other duty required of him by law " it is provided that he shall forfeit a like sum, not to the city, but to the town, and for the very obvious reason that " any other duty required of him by law " refers not to any duty required of a supervisor elected from the ward of a city, but only to those elected from a town.

The only duties required of a supervisor other than those imposed by article 3, section 12, of the County Law, are those set forth in article 3, section 29, of the Town Law. A supervisor elected from the town is the treasurer of the town, collects and disburses all town moneys and acts in all respects as its fiscal officer. In addition, it is his duty to report to the board of supervisors the financial condition of the town and to attend all meetings of the board.

For the reasons above stated, we are of the opinion that Stephen C. Sarkovics, the duly elected supervisor of the sixth ward of the defendant city, is not a city officer of the city of North Tonawanda and that the plaintiff corporation of which the said Stephen C. Sarkovics is an officer, is not prohibited by section 3, article 2 of the General City Law from making sales of gasoline to the defendant city.

Judgment may be entered in favor of the plaintiff and against the defendant for the relief demanded in the complaint.