Robert E. Noonan, J.
The defendant, City of Buffalo, moves to dismiss the complaint in the above-entitled action on the ground that it does not state facts sufficient to constitute a cause of action. The respondents, City of Buffalo, Anthony *608 Manguso, and Joseph J. Cooley, make a similar motion as to the petition, in the above-entitled proceeding.
The action and proceeding arise out of the enactment by the Council» of the City of Buffalo of two local laws on December 23,1958, which were signed by the Mayor of the city on January 3, 1959. These laws are designated as Local Laws Nos. 1 and 2 (1959).
Local Law No. 1 changes the ward boundaries by amending section 4 of the Charter of the City of Buffalo, while Local Law No. 2, in amending section 5 of the charter, changes the council district boundaries by designating the wards that constitute the several councilmanie districts of the city. (Charter of City of Buffalo, enacted by Local Law No. 4 of 1927 of City of Buffalo [published in Local Laws of 1932, p. 21].)
The action brought by George R. Baldwin, Sr., individually and as a member of the Board of Supervisors of the County of Erie, who was elected from the 15th ward of the City of Buffalo, attacks the validity of Local Law No. 1 and asks for a judgment declaring the local law ineffective to change the ward boundaries of the city for the purpose of nominating and electing supervisors to serve as members of the Board of Supervisors, and to confirm the prior ward boundaries as they existed before the enactment of the local law, and in the alternative to declare the local law inoperative until properly approved upon a referendum vote of the qualified voters of the city. The plaintiff’s complaint includes three causes of action: first, a cause of action alleging that the Council of the City of Buffalo does not have the authority under the Constitution or statute to adopt local laws which apply to the election and position of supervisor; second, a cause of action alleging that the council, in changing the ward boundaries, failed to use proper standards and, third, a cause of action in the alternative alleging that the local law in any event changes the method of nominating and electing supervisors and, therefore, requires approval by referendum before becoming effective.
The proceeding brought by Frank J. Grimm individually and as a District Councilman of the City of Buffalo is one under article 78 of the Civil Practice Act, seeking an order in the nature of a writ of mandamus to compel certain of the defendants to take the requisite steps to submit both of the local laws to a referendum vote in the City of Buffalo at the next general election and to treat the local laws as proposed local laws and inoperative until approved by the electors of the City of Buffalo.
*609 The question of the validity of these local laws depends, for the most part, upon the construction of certain provisions of the New York Constitution and of the City Home Rule.
Section 12 of article IX of the Constitution, in part, reads: ‘ ‘ Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the state relating to its property, affairs or government. Every city shall also have the power to adopt and amend local laws not inconsistent with this constitution and laws of the state, and whether or not such local laws relate to its property, affairs or government, in respect to the following subjects: the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all its officers and employees except of members of the governing elective body of the county in which such city is wholly contained, the membership and constitution of its local legislative body, the transaction of its business ”. (Emphasis added.)
The italicized provisions of section 12, hereinabove quoted, were added as new matter in the present Constitution adopted in 1938.
Subdivision 1 of section 11 of the City Home Rule Law, in part, reads: “1. Subject to the restrictions provided in this chapter, the local legislative body of a city shall have power to adopt and amend (a) local laws in relation to the property, affairs or government of the city and (b) local laws in relation to the qualifications, number, mode of selection and removal, terms of office and compensation of all its officers and employees (not including officers who perform no functions for the city except as members of the governing elective body of a county in which such city is wholly contained), the membership and constitution of its local legislative body, the transaction of its business ”. (Italics supplied.) The italicized words were inserted in 1939 (L. 1939, ch. 867) following the adoption of the Constitution in 1938.
Section 15 of the City Home Rule Law provides for a mandatory referendum, which in this case under the statutory provisions would, if the City Council had the power to enact Local Law No. 1, take place at the next general election, if the local law among other things: “ 4. Abolishes an elective office, or changes the method of nominating, electing or removing an elective officer”. (Italics added.) The italicized words were inserted in subdivision 4 in 1939 (L. 1939, ch. 867).
The plaintiffs maintain that the city had no power to enact the local laws in question under the constitutional and statutory *610 grants of power to a city to enact local laws relating to its ‘1 property, affairs or government ’ ’, while the defendants firmly assert the contrary. If the determination of this question were in any manner decisive of the issues, the court would be impelled to upheld the contention of the plaintiffs in this respect under the definition given to that phrase by the Court of of Appeals, which has stated that the phrase is made up of words which have become words of art and have “ a special limited meaning ’ ’ and that the words are used ‘ ‘ with a Court of Appeals’ definition, not that of Webster’s Dictionary” (Adler v. Deegan, 251 N. Y. 467, 473). In County Securities v. Seacord (278 N. Y. 34, 38) the court said: “ However, the words ‘ property, affairs or government ’ have a narrow significance. (Adler v. Deegan, 251 N. Y. 467.) Not all laws which touch a city in its ‘ property, affairs or government ’ can be controlled by local laws.” (See, also, Robertson v. Zimmermann, 268 N. Y. 52; Schieffelin v. Berry, 217 App. Div. 451, 458-460, affd. 243 N. Y. 603.)
The problem before the court does not turn on the right of the city to enact the local laws in question under the grants of power to enact local laws relating to its property, affairs or government. The provisions contained in section 12 of article IX of the Constitution clearly eliminate that question. Section 12 of article IX, after providing that every city shall have power to adopt and amend local laws relating to its property, affairs or government, continues that every city ‘1 shall also have the power to adopt and amend local laws * * * whether or not such laws relate to its property, affairs or government, in respect to the following subjects: the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all its officers and employees, except of members of the governing elective body of the county in which such city is wholly contained ”. (Italics added.) The provisions of subdivision 1 of section 11 of the City Home Buie Law are practically the same as those above quoted. By them a city is given the right to adopt local laws in relation to the ‘ ‘ mode' of selection * * * of all it officers and employees.” (Italics supplied.) The excepting provision, however, denying power to a city to legislate, is more explicit than the constitutional prohibition, for it reads: “ (not including officers who perform no functions for the city except as members of the governing elective body of a county in which such city is wholly contained) ”. (Italics supplied.) It is only a supervisor elected from a city to the Board of Supervisors of the *611 county who performs no functions for the city. The excepting provision in the Constitution restricting a city to adopt local laws applies “whether or not ” such laws relate to property, affairs or government of the city. Language could not be more clear that a city may not adopt a local law relating to the ‘6 mode of selection ” of a representative from a city, that is, a ward supervisor, on the Board of Supervisors of a county.
That the phrase, excepting ‘ ‘ members of the governing elective body of a county”, refers to supervisors is made crystal clear by section 1 of article IX of the Constitution which provides that there shall be in each county “ a board of supervisors, .or other elective governing body ”.
The defendants maintain that the ward supervisors of the City of Buffalo are city officers and that the restriction on city local law legislation does not apply to them. This position runs counter to the explicit language of the Constitution and section 11 of the City Home Rule Law hereinabove quoted. There are two answers to this contention: first, even if ward-elected supervisors were to be classified as city officers, they are not officers who perform any functions for the city but are members of the governing elective body of the county and are specifically excepted; second, they are not city officers. The supervisors elected from the wards of the city do not perform any city functions. The provisions of section 425 of the charter of the city, that the supervisors elected from the wards of the city “ shall be members of the board of supervisiors of Erie County and, as such, shall have the same powers and duties as supervisors of the towns of Erie County ”, are wholly ineffective to give them the powers of town-elected supervisors who are by statute town officers as well as county officers, depending on the capacity in which they may be acting (Town Law, § 29; County Law, §§ 200 et seq.; §§ 725, 775). A supervisor elected from a ward in the City of Buffalo can exercise no town duties or functions, for there are no towns in the city.
Furthermore, supervisors from the wards of the City of Buffalo do not function as a collective body representing the city. Each is a representative of his respective ward in the county legislative body, the Board of Supervisors, the same as is a town-elected supervisor. The supervisors in their collective capacity are county officers, for they constitute the Board of Supervisors of the county (County Law, § 150). The courts have held that a supervisor elected from a city ward is not a city officer. (Salducco v. Etkin, 244 App. Div. 681, 684, revd. *612 on other grounds 268 N. Y. 606; Twin City Service Station v. North Tonawanda, 162 Misc. 271, 274; 59 N. Y. St. Dept. Rep. 263, 264, 1938 Atty. Gen. [Inf.].) In Wenzler v. People (58 N. Y. 516, 529) the court said: “The office must be judged and its character determined by the duties and functions, and the powers and jurisdiction conferred upon the incumbent rather than by the name and title given to it by the act of its creation.” (Cases cited.)
The case of Lane v. Johnson (283 N. Y. 244) relied upon by the defendants holds nothing in conflict with the authorities cited above for that case was decided under a charter granted by the Legislature to the City of Peekskill before the adoption of the 1938 Constitution. The charter granted to the city provided that the city officers under the act should include all persons elected or appointed and there were included under the category of elective officers two supervisors. The defendants also rely upon the case of People ex rel. Clancy v. Supervisors (139 N. Y. 524, 527 [1893]) in which the issue was whether the statute amending the Charter of the City of Yonkers to provide for the election of supervisors from wards of the city was constitutional. The court in upholding the law stated that members of the Board of Supervisors hold that office and perform the duties of the office under a general law and by force of their election as supervisors of the separate towns or cities. An examination of the Revised Record of the New York Constitutional Convention (1938), volume 3, pages 1840-1841, 1844, and Journal of the Constitutional Convention, page 346, shows that the Clancy case was the genesis of the provisions of section 12 of article IX of the 1938 Constitution, excepting from the right of cities in adopting local laivs in respect to the “mode of selection * * * of all its officers ” the members of the governing elective body of the county in which such city is wholly contained. It is perfectly clear that the mode of selection of city ward-elected supervisors is explicitly excepted from the local law powers of a city whether or not they may be called city officers (N. Y. Const., art. IX, § 12). This is made even more clear by the excepting provisions contained in subdivision 1 of section 11 of the City Home Rule Law hereinabove set forth.
The crucial and decisive question here, quite obviously, is whether the change of the ward boundaries by Local Law No. 1 (1959) is a “mode of selection” in relation to the election of ward supervisiors who are elected members of the Board of Supervisors of Erie County.
*613 The phrase “mode of selection ” clearly covers the method of “ nominating ” or “ electing ” city ward supervisors under legislative definition, for section 15 of the City Home Buie Law, which provides for a mandatory referendum when a city-adopted local law covers certain matters, was amended in 1939 (L. 1939, ch. 867), following the adoption of the 1938 Constitution, by adding in subdivision 4 the italicized words in the following phrase: “or changes the method of nominating, electing or removing an elective officer ’ ’.
The word “ mode ” used in the phrase “ mode of selection ” has a broad meaning and refers to anything and everything pertaining to the selection of ward supervisors. The word “ mode ” is defined as, the “ customary manner; the manner in which a thing is done. * * * The term is said to be broader than ‘ method ’ or ‘ system ’ ” (40 C. J., p. 1233). “ Mode usually means the manner in which a thing is done ” (Hanks Dental Assn. v. Tooth Crown Co., 194 U. S. 303, 308). The word “mode” is defined “1. Maimer of doing or being; method; form; fashion.” (Webster’s New International Dictionary [2d ed.].) That the change in the boundaries of the city wards which would regroup the electors voting for the ward supervisors would change their ‘ ‘ mode of selection ’ ’ is shown by the decision in Lord v. Equitable Life Assur. Soc. (109 App. Div. 252). In that case, the directors of the insurance company, a stock corporation, attempted to amend the charter so as to permit policyholders to vote for directors and to elect a majority of the directors. This action by the directors was sought to be justified under the 1853 statute, the basis of the incorporation of the insurance company. It provided that the charter of a company should set forth 11 the mode and manner in which the corporate powers of the company are to be exercised; the manner of electing the trustees or directors and officers The court, in holding the amendment to the charter invalid, said (pp. 267-268): “ the intent was not to permit the incorporators to enfranchise policyholders or others outside of the stockholders, but to point out the manner of election; to determine whether the fifty-two directors should be elected annually in a body on a single ticket or individually or in groups, a portion retiring each year. The power given to the corporators was to determine the manner of elections, not the qualifications of electors, and in the absence of special statutory provisions no one would be entitled to a vote in the choice of directors unless he was a member of the corporation; ” (emphasis added).
The changes made by Local Law No. 1 (1959) in the boundaries of 26 out of the 27 wards of the city clearly change the *614 mode of selection or methods of nominating and electing ward supervisors of the city, in violation of the constitutional and statutory prohibitions (N. Y. Const., art. IX, § 12; City Home Rule Law, § 11). To illustrate, if the city by local law, can change ward bomidaries in any respect, its right and power in making boundary changes is unlimited. In this connection, it will be borne in mind that there is no constitutional or statutory requirement that political subdivisions of a city, such as alder-manic districts or wards, must be based upon equality of population (People ex rel. Boyle v. Cruise, 197 App. Div. 705, 707, affd. 231 N. Y. 639). Upon the assumption of this unrestricted right to change ward boundaries, the city could, by adoption of a local law, divide one of the wards described in the charter into 26 wards and place the remaining wards as presently constituted into one ward. Quite obviously, this would change the mode of selection of ward supervisors. That this extreme fragmentation of one ward and grouping of all the other wards of the city into one ward which would still retain 27 city wards might never occur does not alter the principle or question presented.
The court, however, is not left to its own construction of the phrase “ mode of selection ”, for this phrase has been construed to cover the change of councilmanic district boundaries by a city local law in the case of Bareham v. City of Rochester (246 N. Y. 140, modfg. 221 App. Div. 36 [4th Dept., 1927]). Though the phrase ‘ ‘ mode of selection ’ ’ was construed as stated, the case is not an authority that the City of Buffalo may change the ward boundaries by the adoption of a local law, for such action is specifically prohibited by the exception provisions contained in both section 12 of article IX of the 1938 Constitution and in section 11 of the City Home Rule Law as hereinabove shown.
The Bareham case arose under the 1923 Home Rule Amendment to the Constitution (art. XII, § 3) which provided that every city “ shall have power to adopt and amend local laws # * * relating to the * * * number, mode of selection * * * of all its officers and employees of the city ’ ’. The Appellate Division upheld most of the provisions of a city local law making changes in the Rochester city government. The local law did not change the boundaries of the wards but provided for four councilmanic districts based on ward boundary lines and also provided for a council and the election of' a councilman from each district and the election of five councilmen from the city at large. The court said (pp. 40-41): “ The division of the city into councilmanic districts has been made, *615 and the nomination and election of councilmen whose terms of office are to begin January 1, 1928, are scheduled to take place in the autumn of this year. * * * We are not impressed by the argument that ‘ mode of selection ’ in this section 11 refers simply to determining whether officers shall be elected or appointed. * * * There is no prohibition against dividing a city into districts for the purpose of electing certain city officials by the voters of single districts, to the exclusion of all voters in the city. It seems that granting to the local legislative body the ‘ mode of selection ’ of the officers of the city gave the common council authority to enact article 1 of the Local Law.”
The Court of Appeals in the Bareham case (246 N. Y. 140) modified the judgment only insofar as to hold so much of the local law invalid as related to the Election Law for the omission to set forth therein the provisions of that law which were amended by the local law. The court said (pp. 146-147): “ The term ‘ mode of selection ’ expresses an intent to allow a city to determine not only that it shall cause its officers either to be elected or appointed but connotes also that a municipality may define the precise method by which either an election or appointment shall be effected. To hold that the expression restricts municipal action merely to a choice of election or appointment would, we think, place a narrower interpretation on that phrase than the Constitution and the statute intended (emphasis added). * * * The option which the Legislature by that act left open to cities has been accepted by Rochester. The Constitution and the Legislature say that the city may choose the mode of selection of its officers and the city has specified it.”
For the reasons above set forth, it is concluded that ward boundaries of the City of Buffalo may not be changed by local law and that Local Law No. 1 (1959) is wholly invalid. We do not reach the contention of plaintiff’s counsel that this local law is invalid under section 21 of the City Home Rule Law, which prohibits a city from superseding a State statute by a local law.
The only authoritiy that has come to the attention of the court in which consideration has been given to the power of a city to change its ward boundaries by a local law, is an inconclusive informal opinion of the Attorney-General furnished to the City Attorney of Canandaigua in 1953 (1953 Atty. Gen. [Inf.] 21-22). He concludes without entering into any discussion of the power of a city by local law to change the “ mode of selection ” of supervisors or the restrictions on such action, both constitutional and statutory, that the changes could be made. This opinion is neither instructive nor controlling.
*616 Local Law No. 2 (1959) under the authorities above considered, in changing the council district boundaries, in effect changes the method of “nominating” or “electing” elective officers of the city and under the provisions of subdivision 4 of section 15 of the City Home Eule Law, if otherwise valid, would be subject to the mandatory referendum provisions of that section. But since Local Law No. 1 is held invalid, Local Law No. 2 must also fall, for the council district boundaries are based on assumed but nonexisting ward boundary lines.
The defendants, in support of their claim that the local laws in question are valid, cite several reported instances in which they state that ward boundaries were changed by local law. No claim is made that their validity was challenged in' court. Procedures, even when authorized by statute, will be set aside after usage over a period of years when violative of constitutional provisions (Helme v. Buckelew, 229 N. Y. 363). In Matter of Wendell v. Lavin (246 N. Y. 115, 120) the court said: “Nevertheless, neither practice nor intentions can modify the express provisions of the Constitution. Sometimes the interpretation of a doubtful and obscure clause in an act of the Legislature, or in a Constitution, may be aided by the practice which has grown up under it, but plain and clear provisions of a Constitution require no such aid; they are to be enforced and brought to life early or late, and must not be smothered by the accumulation of custom or violations.”
In the action brought by the plaintiff Baldwin, in which three alleged causes of action are stated in the complaint, the defendants’ motion is made for the dismissal of the complaint and is not addressed to the separate alleged causes of action. Under these circumstances it is unnecessary, in denying the motion to dismiss the complaint, to determine whether or not the second alleged cause of action states facts sufficient to constitute a cause of action (Imperatrice v. Imperatrice, 298 N. Y. 549; Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79, 84; Andrews v. 98 Montague, Inc., 282 App. Div. 1066).
Because of the conclusion herein reached as to the first cause of action, a determination as to the third cause of action becomes academic.
The motions to dismiss the complaint and the petition are denied.
Submit orders accordingly, without costs.